COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Clements
Argued at Alexandria, Virginia


MAURICE PURDIE
                                              OPINION BY
v.   Record No. 0970-00-4        JUDGE ROSEMARIE ANNUNZIATA
                                            JULY 10, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                    Joanne F. Alper, Judge

        Peter M. Baskin (Pelton, Balland, Young,
        Demsky, Baskin & O'Malie, P.C., on brief),
        for appellant.

        Marla Graff Decker, Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


     The appellant, Maurice Purdie, appeals his convictions for

possession of cocaine, in violation of Code § 18.2-250, and for

possession of marijuana,[1] in violation of Code § 18.2-250.1.

Purdie contends the trial court erred in denying his motion to

suppress the evidence of the cocaine and marijuana seized from

his person.  Because the police had probable cause to arrest

Purdie at the time they conducted the search and seized the

--------------------------------------------------

     [1] The Court notes that the sentencing order in Circuit Court
No. CR99-994 indicates that appellant was found guilty of
possession of cocaine.  However, as the appellant was found
guilty of possession of marijuana, this matter is remanded to
the trial court for the sole purpose of correcting that clerical
error.

evidence, we hold the trial court properly denied Purdie's motion to suppress and affirm the convictions.

## BACKGROUND

On appeal, we view the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On November 13, 1998, at about 8:30 p.m., Officer Curtis Blake of the Arlington Police Department was on duty in an unmarked police car equipped with emergency lights and a siren. He saw a vehicle traveling east on 24th Street turn south onto Glebe Road. The vehicle attracted Blake's attention because it had tinted windows that the officer believed were darker than permitted by the Code of Virginia. Blake had previously written twenty to thirty summonses for "excessive tint," and believed the front window of the vehicle had "too much tint."

Blake activated his emergency lights and tapped on his siren several times in an effort to stop the vehicle. Nevertheless, the vehicle "traveled about 300 yards before it finally pulled over . . . ." Blake did not recognize the driver, but he knew the two passengers. Purdie was in the front passenger seat, and Terry Mangun was in the back seat.

Officer Blake knew Purdie was a "police fighter," as well as a "police runner." The officer also knew that he was involved in the distribution of narcotics and had committed

"violent criminal offenses."  Because Blake was the only police officer present when he stopped the vehicle, Blake was concerned for his safety.  Shortly thereafter, backup officers arrived on the scene.

Officer Chris Dengeles, the next officer to approach the vehicle, also immediately recognized Purdie.  According to Dengeles, Purdie had a reputation in the police community for being dangerous.  Dengeles knew Purdie from his prior involvement with the police, beginning some time in late 1989 or early 1990.  Specifically, Dengeles knew that Purdie had previously stabbed a police officer and had been arrested after he fled from an officer and discarded narcotics while attempting to flee.  Dengeles's safety concerns were amplified by the fact that the vehicle failed to stop until it had traversed some 300 yards after Blake activated his emergency equipment.  Dengeles testified that the failure to stop immediately when ordered to do so often indicates that those in the car might "run" or are "buying time" before they encounter the police.

In order to safely conduct a test of the tint level of the windshield, Blake asked the occupants to exit the vehicle. Dengeles noticed that as soon as Blake gave the order to exit, Purdie "became very nervous."  Dengeles described Purdie as "hesitant about getting out of the car," "looking around a lot," and "hunched over slightly."  He remained in a bent position as he walked from the car, giving rise to Dengeles's belief that

Purdie was hiding something in the area of his waistband, lower abdomen, or groin area.  Once Purdie passed Dengeles, and his back was toward the officer, Purdie straightened up, giving further credence to Dengeles's suspicion that Purdie was concealing something somewhere on the front portion of his body.

Dengeles continued to observe Purdie as he headed toward the back of the car.  Concerned about Purdie's suspicious behavior, Dengeles continued his observation as Officer Conigliaro conducted a patdown while Purdie stood next to a guardrail.  When Conigliaro reached the areas of Purdie's body where Dengeles suspected Purdie was hiding something, Purdie lifted his leg and put his foot on the guardrail in a manner that concealed the groin and front waistband areas.  Because Conigliaro failed to check Purdie's waist or groin areas at that time, Dengeles concluded the frisk was inadequate and his safety concerns were, therefore, not dispelled.

Dengeles continued to watch Purdie as he sat on the guardrail near the car.  He saw Purdie look from side to side. "He started to look out of the corner of his eyes at the location of all of [the] officers" and looked "360 degrees all around him as well."  He further observed Purdie, who was wearing a bulky jacket, move his hands, as if "gathering something" inside the pockets of the jacket, and remove them, his fists clenched.  The officer further explained that Purdie then looked around, put his hands down by the side of the

guardrail and then back into his pockets.  Purdie repeated the movements "a couple more times where he would gather something, bring it out, look at me and then put his hand back in his pocket."

Based upon Purdie's behavior, and because Conigliaro never checked the area where Dengeles believed Purdie might have concealed something, Dengeles decided to conduct a second patdown.  When Dengeles told Purdie to put his hands on the car, Purdie had his hands in his pockets "gathering whatever he was gathering."  He "took his hand out of his pocket, closed fist, and walked slowly over to the car," with Dengeles beside him. Immediately before putting his hands on the car, Purdie "quickly brought his hand up to his mouth" and swallowed whatever he had in his hand before the police could stop him.

Dengeles had seen the hand-to-mouth movement dozens of times, characterizing it as the manner in which drugs are destroyed before the police can seize them.  Consistent with his experience, and based upon his observations of Purdie's behavior, the officer concluded that Purdie was about to swallow narcotics.

The police unsuccessfully attempted to grab Purdie's hand as it went to his mouth.  After restraining him on the ground, the officers were unable to retrieve anything from Purdie's mouth and found his hand empty.  Their order to "spit out whatever he had in his mouth" went unheeded.  Dengeles reached

inside the pocket from which Purdie had taken his hand before bringing it to his mouth and retrieved a piece of crack cocaine. Marijuana was also found in Purdie's left jacket pocket.

## ANALYSIS

On appeal from a trial court's ruling denying a defendant's motion to suppress evidence, the defendant bears the burden of showing that the denial of the motion to suppress constituted reversible error. Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980); Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993). In reviewing the legality of a search, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc). However, we review de novo "[u]ltimate questions of reasonable suspicion and probable cause." Id. at 197, 487 S.E.2d at 261; see Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000); McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999) (en banc).

Purdie does not challenge the stop of the vehicle in which he was a passenger, the request for him to exit the vehicle, or the initial patdown conducted by Officer Conigliaro. Purdie's claim is limited to the legality of Officer Dengeles's search of

Purdie's jacket pocket.  Purdie contends that Dengeles had

neither a reasonable, articulable suspicion that Purdie was

armed before conducting a second patdown, nor probable cause to

search Purdie.  We disagree with Purdie's contention and find

that because Dengeles had probable cause to arrest Purdie, the

search was legal.

When determining whether there was probable cause to

support an arrest, we examine the "totality of the

circumstances."  Yancey v. Commonwealth, 30 Va. App. 510, 516,

518 S.E.2d 325, 328 (1999); United States v. Sokolow, 490 U.S.

1, 9-10 (1989).

> [P]robable cause is a flexible, common-sense
> standard.  It merely requires that the facts
> available to the officer would "warrant a
> man of reasonable caution in the belief"
> that certain items may be contraband or
> stolen property or useful as evidence of a
> crime; it does not demand any showing that
> such a belief be correct or more likely true
> than false.

Texas v. Brown, 460 U.S. 730, 742 (1983) (citation omitted).

Probable cause does not require "an actual showing," but,

rather, "only a probability or substantial chance of criminal

activity."  Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983);

Quigley v. Commonwealth, 14 Va. App. 28, 34, 414 S.E.2d 851, 855

(1992).  "'Probable cause exists when the facts and

circumstances within the officer's knowledge, and of which he

has reasonably trustworthy information, alone are sufficient to

warrant a person of reasonable caution to believe that an

offense has been or is being committed.'" Jones v. Commonwealth, 18 Va. App. 229, 231, 443 S.E.2d 189, 190 (1994) (citation omitted); see Schaum v. Commonwealth, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975). "If an officer has reason to believe that a person is committing a felony in his presence by possessing contraband or a controlled substance, the officer has probable cause to arrest the individual without a warrant." Buck v. Commonwealth, 20 Va. App. 298, 304, 456 S.E.2d 534, 536-37 (1995). When looking at the totality of circumstances, we give deference to the officer's understanding of the situation based on his or her training and experience. McGuire v. Commonwealth, 31 Va. App. 584, 593, 525 S.E.2d 43, 48 (2000); see also Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976) ("In determining whether probable cause exists courts will test what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.").

Based on the totality of the circumstances, consisting of furtive movements and suspicious conduct, which culminated in Purdie swallowing something that had been hidden in his hand, Officer Dengeles had probable cause to believe that Purdie had disposed of an illegal substance. At that point in time, Dengeles also had probable cause to arrest Purdie for possession of an illegal substance. See id. at 877, 223 S.E.2d at 889 (furtive gesture of throwing down hand-rolled cigarette gave

officer probable cause to search vehicle); <u>Mavin v.</u>
<u>Commonwealth</u>, 31 Va. App. 161, 165-66, 521 S.E.2d 784, 786-87
(1999) (evasive actions, including furtive gestures to conceal
prescription bottle, were factors to consider when determining
probable cause to believe bottle contained contraband); <u>see also</u>
<u>Lawson v. Commonwealth</u>, 217 Va. 354, 355, 358, 228 S.E.2d 685,
686, 687 (1976); <u>Buck</u>, 20 Va. App. at 304, 456 S.E.2d at 536-37.

<u>Buck</u>, 20 Va. App. 298, 456 S.E.2d 534, involved furtive
conduct similar to the conduct observed in this case.  In <u>Buck</u>,
the officers were in plain clothes and were patrolling a high
crime area in an unmarked car.  The officers observed the
defendant, whom the police did not know, standing on a street
corner talking to a group of men.  When the police car passed,
the group dispersed.  The officers circled the block and upon
returning, saw the defendant talking to a second group of men.
This group also dispersed as the officers drove by.  When the
officers drove around the block a third time, they observed the
defendant in the back seat of a car.  The car drove around the
block and returned a few minutes later.  After the defendant
exited the vehicle, one of the officers approached the defendant
and announced he was a police officer.

> At that moment, the [defendant] quickly
> placed his closed fist to his mouth and
> began to run.  The officers did not see
> anything in the [defendant's] hands or see
> him place anything in his mouth at the time,
> although it appeared from his motion that he
> was placing something in his mouth.  Officer

> Baine pursued the [defendant] and tackled
> him within ten yards of the initial
> encounter. A scuffle ensued between the two
> of them. During the scuffle, the
> [defendant] was making a chewing motion.

Id. at 301, 456 S.E.2d at 535.

   Based on these facts, we concluded:

> The facts support the finding that the
> police officers, having observed the
> [defendant's] activity, reasonably believed
> that the [defendant] was trying to eat and
> destroy drugs in his mouth. Therefore, they
> had probable cause to arrest the [defendant]
> based on the objective, reasonable belief
> that he had been or was committing a crime.

Id. at 304, 456 S.E.2d at 537.

   In this case, Officer Dengeles recognized Purdie and knew he had a reputation for fighting and running from the police while carrying illegal narcotics. Specifically, Dengeles provided uncontroverted testimony that Purdie had previously stabbed an officer and had discarded illegal narcotics as he attempted to flee. His knowledge of Purdie's prior conduct is relevant in determining whether probable cause to arrest existed. See Brinegar v. United States, 338 U.S. 160, 169-70 (1949) (officer's knowledge of defendant and his past conduct may be considered as evidence supporting a finding of probable cause); Schaum, 215 Va. at 500, 211 S.E.2d at 75 (knowledge of suspect and his prior criminal acts factor to be considered in a probable cause determination).

In addition, Dengeles observed nervous conduct on Purdie's part from the inception of the traffic stop.  See Logan v. Commonwealth, 29 Va. App. 353, 361, 512 S.E.2d 160, 164 (1999) (nervousness of the suspect is a factor to consider when evaluating an officer's actions).  Dengeles had concerns at the outset of the traffic stop because the vehicle in which Purdie was riding did not stop when directed to do so and traveled 300 yards before pulling over.  These concerns were not dispelled by Purdie, who "became very nervous" when asked to get out of the vehicle.  When he exited the car, he did so hesitantly and was "hunched over slightly."  Purdie did not straighten up until after the front of his body was out of Dengeles's view.  Based on this behavior, Dengeles, who had fourteen years of experience as a police officer, believed that Purdie was hiding something in the area of his waistband, lower abdomen, or groin area.

While sitting on the guardrail, Purdie had his hands inside his jacket and appeared to "gather something up" in his pockets.  Purdie repeated the "gathering" motion at least twice, in what appeared to be an attempt to discard something from his jacket pocket, while looking around and watching the officers.

When Dengeles told Purdie to go over to the car and put his hands on it, his hands remained in his pockets, "gathering whatever he was gathering."  When he took one of his hands out of the pocket, he kept it in a clenched fist as he walked toward

the car and, just before placing his hands on the car, Purdie "quickly" put his fisted hand "up to his mouth."

Dengeles testified that he had seen individuals engage in the same hand-to-mouth movement on dozens of occasions, and described the action as a way in which people destroy drugs in order to avoid having the contraband seized by the police. See Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 271 (1989) ("Trained and experienced police officers . . . may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.").

When Dengeles subsequently searched Purdie's pocket, he had probable cause to arrest Purdie and was entitled to conduct a complete search of his person incident to that arrest. Buck, 20 Va. App. at 304, 456 S.E.2d at 536-37 ("When an officer has probable cause to arrest a person, the officer may search the person, particularly where the evidence is of a highly evanescent nature.").

It is of no consequence that Dengeles conducted the search prior to formally arresting Purdie. Armstrong v. Commonwealth, 29 Va. App. 102, 112, 510 S.E.2d 247, 252 (1999); Buck, 20 Va. App. at 304, 456 S.E.2d at 537; Poindexter v. Commonwealth, 16 Va. App. 730, 733-34, 432 S.E.2d 527, 529 (1993); Rawlings v. Kentucky, 448 U.S. 98, 111 (1980).

Because Officer Dengeles had probable cause to arrest Purdie at the time he conducted the search, we find the trial

court properly denied Purdie's motion to suppress the evidence.

Accordingly, we affirm the convictions.

<u>Affirmed</u>.