COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, McClanahan and Senior Judge Coleman
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                    MEMORANDUM OPINION* BY
v.    Record No. 1000-03-2           JUDGE ROBERT P. FRANK
                                        SEPTEMBER 4, 2003
DAVID GARLAND ELLIOTT


          FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                    Timothy J. Hauler, Judge

          H. Elizabeth Shaffer, Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellant.

          Craig S. Cooley for appellee.


     David Garland Elliott (appellee) was indicted for possession

of cocaine with the intent to distribute, in violation of Code

§ 18.2-248.  He filed a motion to suppress the cocaine, as

evidence collected in violation of his Fourth Amendment rights.

The trial court granted the motion.  The Commonwealth appeals the

ruling, pursuant to Code § 19.2-398.  For the reasons stated, we

find the trial court erred in suppressing the cocaine and remand

for further proceedings.

                            BACKGROUND

     On September 17, 2002, Officer James Venti of the

Chesterfield County Police Department received an anonymous

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

telephone call at the police station. The caller indicated a drug transaction was occurring at the parking lot of Caddy's restaurant, involving a white male parked in a red Ford F-250 pickup truck. The caller gave specific descriptions of both the white male and the truck. The tipster told Venti that the white male had drugs in the steering wheel where the airbag should be. On cross-examination, the officer admitted the anonymous tipster did not disclose his location nor did the caller indicate he observed the incident.

In response to this information, Venti "put a BOL out" over the police radio channel, indicating "a red Ford pickup truck was doing a drug deal in Caddy's parking lot." Venti indicated the truck was "a red Ford 250" and requested that an officer in an unmarked car confirm the information. Chief of Police Carl R. Baker heard the radio transmission. As he was driving an unmarked car and wearing a business suit, Baker answered the call.

In Caddy's parking lot, Baker saw a red pickup truck with two males inside. He obtained a partial license plate number from the vehicle. Baker watched the truck, but did not observe any criminal activity. When Baker exited the parking lot, the truck drove out behind him. Baker noticed the driver of the truck failed to signal before turning onto Winterfield Road. At that point, Baker lost sight of the truck. He later observed other police units stopping the same Ford truck.

Officer Peter J. Cimbal was on patrol in a marked police car that same evening when he heard Officer Venti's "BOL" and Baker's additional information over the radio. Officer Cimbal saw the red Ford traveling on Winterfield Road, radioed the complete license plate number to the dispatcher, and followed the truck.

When the pickup truck reached the stop sign at the intersection of Salisbury and Westfield Roads, the driver failed to come to a complete stop and failed to activate his right-turn signal before turning onto Salisbury Road. Cimbal radioed the other police cars in the area that he "had enough to stop the vehicle." He waited for other police units to arrive and then activated his emergency equipment. Appellee, the driver of the truck, stopped the vehicle in a Walgreen's parking lot.

When Officer Cimbal walked to the driver's side of the truck, he "could smell an odor of alcohol coming from the vehicle as the driver rolled the window down." Upon request, appellee presented his identification. In response to Cimbal's question, appellee denied that he had consumed any alcohol. Cimbal then asked him to step out of the truck for field sobriety tests. As appellee got out of the vehicle, Cimbal noticed his movements were "very slow," his speech was "somewhat slurred and slow," and his eyes were "really glassy and bloodshot." Cimbal had to ask appellee to step away from the truck "so he wasn't leaning against it before [Cimbal] began to test." The officer indicated he had no prior knowledge of appellee's normal speech pattern.

After appellee told Cimbal he had a high school education, the officer conducted several field sobriety tests. Cimbal asked appellee to recite the alphabet, beginning with the letter "D" and continuing to the letter "V." Appellee recited the letters correctly, but did not stop at "V," continuing instead to the end of the alphabet. The officer indicated appellee failed that test because he did not follow the instructions. Appellee satisfactorily counted forwards and backwards as directed.

When performing a "one-legged stand," appellee set his foot down on numbers seven, nine, and twelve as he counted from one to thirty. He used his arms to maintain his balance and, "on occasion," placed his foot on the ground. Prior to this particular test, the officer asked appellee whether he had "any medical problems at all." Appellee replied he had a weak ankle, and Cimball told him "he could use the leg of his choice to stand on, whichever was the stronger." The record is silent as to which leg he used. The trial court assumed appellee chose his stronger leg.

Officer Cimbal arrested and handcuffed appellee for driving under the influence (DUI), then placed him in the police unit. Although the officer knew at that point he could have searched the truck as a search incident to arrest, nevertheless, Cimbal asked appellee for consent to search. Appellee refused to give consent, denying drugs were in the truck. Officer Cimbal then requested a drug dog. The dog and his handler arrived within

thirty minutes of the request.  The dog alerted "for the presence of drugs" to the driver's side of the truck and to appellee.

The officers then searched the truck.  On the floorboard, between the driver's and passenger's seat, they found a digital scale.  When they removed the steering wheel cover, they discovered a bag of powder cocaine, a marijuana smoking device, and "a couple" of small bags of marijuana.

At the hearing on the motion to suppress, appellee argued the anonymous tipster was unreliable and the source of his information was unknown.  He also argued nothing corroborated the tip.  He further contended the police did not have probable cause to arrest him for DUI and, therefore, any search incident to the illegal arrest was also unconstitutional.

The trial court granted the motion to suppress.  While finding the initial stop was proper, based on two traffic violations, the court concluded the police did not have probable cause for the DUI arrest.  The trial court explained:

> We really don't have erratic driving.  We've got testimony with regard to two relatively minor violations that probably happen on a regular basis everywhere in the country, and that is failure to use a turn signal . . . and failure to stop at a stop sign. . . .
>
> We've got an odor of alcohol.  I don't know what that's worth.  An odor of alcohol just basically says somebody's had a drink.
>
> *     *     *     *     *     *     *
>
> We've got further his speech was slow. Again, not an indicia necessarily of

- 5 -

intoxication, although it could be consistent with intoxication. Movements slow and deliberate. Not necessarily dispositive of intoxication, but certainly a possible indicia. Glassy eyes and bloodshot eyes. Could be attributable to a number of factors. You don't have any of the objective factors pertaining to this Defendant that in and of themselves are clearly dispositive of someone who is intoxicated, but only someone who may have been consuming alcohol.

\*     \*     \*     \*     \*     \*     \*

You've got an alphabet count, or an alphabet recitation, and I guess you could say he went too far so he didn't follow the directions. You've got a numerical count, which he did okay, and a stork stand. We don't know which ankle was the weak ankle. . . . And we do know the officer said, well, take your choice of which ankle you want to stand on. I can only assume from the evidence that he chose his better ankle. But we've got a stork stand that by and large was not performed to the level of perfection.

I've got no testimony about slurred speech, just that the stork stand was not performed to the level of perfection. I've got an odor of alcohol. I've got two minor traffic citation violations.

\*     \*     \*     \*     \*     \*     \*

[T]his Court does not find that there is sufficient objective factors to support the arrest for [DUI].

\*     \*     \*     \*     \*     \*     \*

I do not find that, otherwise, that there was probable cause for the seizure that took place.

The Commonwealth appealed this decision.

ANALYSIS

The sole issue before this Court is whether the police had probable cause to arrest appellee for DUI.[1] In his brief, appellee concedes that, if the police had probable cause to arrest, the subsequent search was lawful. Further, appellee does not contest the validity of the traffic stop.

"Upon appeal from a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the prevailing party, in this instance appellee, granting to him all reasonable inferences fairly deducible from the evidence." Commonwealth v. Spencer, 21 Va. App. 156, 159, 462 S.E.2d 899, 901 (1995).

> "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). However, we review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case. See Shears v. Commonwealth, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699.

---

[1] In its brief, the Commonwealth does not maintain the anonymous tip and the drug dog's reactions provided probable cause to search the vehicle.

Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999).

The Supreme Court of Virginia has defined probable cause, explaining:

> "Probable cause, as the very name implies, deals with probabilities. These are not technical; they are the factual and practical considerations in every day life on which reasonable and prudent men, not legal technicians, act. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed." Saunders v. Commonwealth, 218 Va. 294, 300, 237 S.E.2d 150, 155 (1977).

Derr v. Commonwealth, 242 Va. 413, 421, 410 S.E.2d 662, 666 (1991). When determining whether probable cause supports an arrest, we do not examine each element separately for a determinative fact, but instead consider the "totality of the circumstances." Yancey v. Commonwealth, 30 Va. App. 510, 516, 518 S.E.2d 325, 328 (1999).

Probable cause does not require the officer's "belief be correct or more likely true than false" nor is "an actual showing" of criminal behavior required. Purdie v. Commonwealth, 36 Va. App. 178, 185, 549 S.E.2d 33, 37 (2001). "[R]ather, 'only a probability or substantial chance of criminal activity[,]' Illinois v. Gates, 462 U.S. 213, 243 n.13 (1983); Quigley v. Commonwealth, 14 Va. App. 28, 34, 414 S.E.2d 851, 855

(1992)[,]" need be shown to justify an arrest.  <u>Purdie</u>, 36 Va. App. at 185, 549 S.E.2d at 37.

Code § 18.2-266 prohibits "any person to drive or operate any motor vehicle . . . (ii) while such person is under the influence of alcohol . . . ."  "[B]eing 'under the influence of alcohol[]' is established when any person has consumed enough alcoholic beverages to 'so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation.'"  <u>Thurston v. City of Lynchburg</u>, 15 Va. App. 475, 483, 424 S.E.2d 701, 705 (1992) (quoting <u>Gardner v. Commonwealth</u>, 195 Va. 945, 954, 81 S.E.2d 614, 619 (1954)). Thus, our inquiry here is whether the facts, examining the totality of the circumstances, were sufficient to warrant a man of reasonable caution in the belief that appellee had drunk enough alcohol to observably affect his "manner, disposition, speech, muscular movement, general appearance or behavior."  <u>Id.</u>

We conclude Officer Cimbal had probable cause to arrest the appellee for DUI.  Appellee failed to stop at an intersection controlled by a stop sign.  He did not signal to turn right. The officer smelled "an odor of alcohol" as appellee rolled his window down.  Appellee denied consuming any alcohol.  <u>See</u> <u>Dowden v. Commonwealth</u>, 260 Va. 459, 469, 536 S.E.2d 437, 442 (2000) (If the fact finder believes a defendant is lying, he "may infer that the accused is lying to conceal his guilt.").  His movements were "very slow," his speech was "somewhat slurred and

slow," and his eyes were "really glassy and bloodshot." See Clarke v. Commonwealth, 32 Va. App. 286, 296, 527 S.E.2d 484, 489 (2000) (officer had probable cause to arrest for public drunkenness where he smelled alcohol, observed suspect's bloodshot eyes, and noted his erratic speech). While he successfully completed the "counting" field sobriety test, he did not follow the officer's instructions on the "alphabet" test. While performing the "stork stand," he put his foot down several times and used his arms to maintain balance. See Fierst v. Commonwealth, 210 Va. 757, 760, 173 S.E.2d 807, 810 (1970) (officer had probable cause for an arrest based on suspect's posture, fumbling, appearance, and manner of exiting his car, although the officer detected no odor of alcohol and did not conduct any field sobriety tests).

Based on the totality of the circumstances, rather than looking at each discrete fact in isolation, a reasonable person properly could infer appellee had drunk enough alcohol to "'so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation.'" Thurston, 15 Va. App. at 483, 424 S.E.2d at 705. Therefore, the officer had probable cause to arrest appellee.

Appellee in his brief refers to the trial court's "factual determination" of no probable cause. While appellee correctly states that we are bound by the trial court's "findings of historical fact," Hayes, 29 Va. App. at 652, 514 S.E.2d at 359,

- 10 -

here, the facts are not in dispute.  The only issue before us is the application of the legal standard for probable cause to those facts.  As stated earlier, we review <u>de</u> <u>novo</u> determinations of "probable cause."  <u>Id.</u>

The appellee also contends the arrest for DUI was a "pre-text to the ultimate motivation of searching the vehicle, investigating the anonymous tip."  As we said in <u>Limonja v. Commonwealth</u>, 8 Va. App. 532, 537-38, 383 S.E.2d 476, 480 (1989):

> The objective sufficiency of the reasons for the stop is the test for determining whether the stop is pretextual.  Police actions are to be tested "under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved."  <u>Scott v. United States</u>, 436 U.S. 128, 138 (1978) (footnote omitted).

Having found the officer had probable cause to arrest appellee for DUI, the appellee's argument of a pretextual arrest fails.

We reverse the decision of the trial court granting the motion to suppress, and we remand for further proceedings.

<u>Reversed and remanded.</u>