COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, Haley and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


JOSHUA TYREE MURPHY

MEMORANDUM OPINION* BY
v.        Record No. 2845-08-2                    JUDGE JAMES W. HALEY, JR.
                                                  FEBRUARY 9, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Catherine French, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(William C. Mims, Attorney General, on brief), for appellee.


I.

After a bench trial, the circuit court found Joshua Tyree Murphy ("Murphy") guilty of

possessing cocaine with the intent to distribute in violation of Code § 18.2-248.  Murphy filed a

pretrial motion to suppress evidence of cocaine discovered during a police search of Murphy's

person immediately following his arrest for trespassing, and he appeals the trial court's denial of

that motion.  On appeal, Murphy argues that the search violated his right to be free from

unreasonable searches and seizures under the Fourth Amendment.  Because the police had

probable cause to arrest Murphy for trespassing, the search of Murphy's person, incident to that

arrest, was consistent with the Fourth Amendment.  Thus, the trial court did not err in denying

Murphy's motion to suppress, and we affirm Murphy's conviction.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Facts

On March 30, 2008, Officer Anthony Ratliff ("Ratliff") of the Richmond police was in the parking lot of the second precinct police station on East Belt Boulevard in the City of Richmond. A construction site largely closed off by eight-foot-high chain-link fencing stood between the second precinct and the Midlothian Village neighborhood of Richmond, which according to Ratliff was an area where crime and illegal drugs were common. Ratliff further testified that the property was an old lumberyard, which in the past was often a pathway for pedestrians between Midlothian Village and Belt Boulevard, until a new owner, GRTC, set up the fences, posted signs marked "no trespassing," hired a security guard, and asked the police to keep people off the property. Because it was a Sunday, no construction work was in progress and at first it appeared to Ratliff that the site was completely deserted. However, Sergeant David Wallis ("Wallis"), who was with Ratliff in the parking lot, directed Ratliff's attention to Murphy and two other people; the record does not identify Murphy's companions, but Ratliff described them as "juveniles." Wallis first saw them walking across the construction site, outside the fence. Shortly afterward, Wallis looked across the lot a second time and this time he saw Murphy and his companions inside the fence, walking across the middle of the construction site. Wallis was unsure whether they had ducked underneath or squeezed through one of the narrow gaps in the fence, but he suspected they must have entered the site by one of the aforementioned methods, since they were nowhere near any of the gates into the lot.

After telling Wallis that he would tell the people to stay off the property, Ratliff entered his police car and drove toward the construction site. He stopped en route to speak to a security guard employed by the property owner to keep trespassers away from the construction site. Ratliff testified that he found the security guard, and asked him whether he was going to do

anything about Murphy and his companions. The security guard did not testify, and Ratliff did not specifically remember the security guard's reply to his question. Ratliff only remembered that the security guard "seemed a little lost" and that he continued to clean the floor mats of his car during the time when Ratliff was attempting to speak with him. According to Ratliff, the security guard made no reply when Ratliff asked him if he would accompany Ratliff to investigate the suspected trespassers.

When Ratliff approached Murphy in his police car, Murphy and the two juveniles were outside of the fence on the Belt Boulevard side of the construction site. Ratliff identified them as the three people he had seen walking across the lot. When Ratliff asked Murphy and the two juveniles whether they would speak to him, they stopped walking, and Ratliff told them to stay off the property. At least one of them responded, saying that they were allowed on the property. Ratliff asked them, "If they are allowing you on the property, why do they have it posted no trespassing and actually have to hire a security guard to make sure people stay off the property." After Ratliff told them this, the juveniles began to protest loudly, and Ratliff asked them for identification. Murphy replied that he did not have any identification. Because he thought Murphy seemed nervous, and Ratliff testified that Murphy made unspecified "furtive looks," Ratliff told Murphy that he would conduct a brief pat-down search for weapons, and he began patting down Murphy's pants leg. During Ratliff's attempt to pat him down, Murphy pulled away from Ratliff and said, "You can't search me." Ratliff responded by telling Murphy to move over to his police car. Murphy refused, repeating: "You can't search me." Then Ratliff took hold of Murphy's coat and pulled Murphy toward the police car.

Next to the police car, Ratliff attempted to place Murphy in handcuffs "for my safety." After Ratliff successfully placed one of Murphy's hands in the handcuffs, Murphy jerked away, and Ratliff told Murphy that he was under arrest for trespassing. Wallis arrived shortly

afterward, and assisted Ratliff in binding Murphy's remaining free hand. Inside a police van, which had arrived during the struggle, Ratliff conducted a search of Muphy's person. In Murphy's left pocket, Ratliff found a substance he believed to be cocaine. The prosecution later introduced the substance into evidence at Murphy's trial.

III.

Analysis

In reviewing a trial court's denial of a motion to suppress, we consider the evidence in the light most favorable to the Commonwealth. McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*). "[A] defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." King v. Commonwealth, 49 Va. App. 717, 720, 644 S.E.2d 391, 392 (2007) (citing Ornelas v. United States, 517 U.S. 690, 691 (1996)). When considering the sufficiency of the evidence on appeal, we give the benefit of all reasonable inferences deducible from the evidence to the party prevailing below, which in this case is the Commonwealth. Shropshire v. Commonwealth, 40 Va. App. 34, 38, 577 S.E.2d 521, 523 (2003). The burden is on Murphy to show that, viewing the evidence according to this standard, the trial court's ruling constituted reversible error. See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980). We will not set aside the judgment of the trial court unless it is plainly wrong or without evidence to support it. Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

The parties argued in the trial court – and continue to argue on appeal – their respective sides of two separate questions: 1) whether the facts justified a pat down of Murphy's outer clothing to protect the safety of the police pursuant to Terry v. Ohio, 392 U.S. 1, 30 (1968); and 2) whether the police had probable cause to arrest Murphy for trespassing. A Terry pat down is

permissible when there exist specific, articulable facts which lead the police to reasonably believe both that criminal activity is afoot and that the person subjected to the pat down may be armed and dangerous. Lowe v. Commonwealth, 33 Va. App. 656, 660-61, 536 S.E.2d 454, 456-57 (2000). Murphy argues that there were no facts that can justify a reasonable belief that he was armed and dangerous. However, given the facts of this case, we need not reach the merits of this issue. Murphy raised this issue pursuant to a motion to suppress, which sought to prevent the admission of the suspected cocaine into evidence. "Pursuant to 'the fruit of the poisonous tree' doctrine, evidence seized as a result of an illegal stop is inadmissible . . . ." Harris v. Commonwealth, 276 Va. 689, 694, 668 S.E.2d 141, 145 (2008). The police did not seize the cocaine evidence that Murphy sought to suppress "as a result of" Ratliff's disputed Terry pat down search of Murphy's outer clothing. On the contrary, Ratliff did not discover any drugs until *after* Ratliff arrested Murphy, placed him in handcuffs, and brought him inside the police van. Thus, the admissibility of the cocaine evidence depends entirely on the resolution of the other issue argued by the parties, that is, whether Ratliff had probable cause to arrest Murphy for trespassing.

When someone is lawfully arrested, the police may search the person of the arrestee and the area where he can reach to grab a weapon or item of evidence. Chimel v. California, 395 U.S. 752, 762-63 (1969). Though the rationale supporting such searches is to protect the safety of police officers and to prevent destruction of evidence, id. at 763, the validity of a search incident to arrest does not depend on proof that one of these reasons justified the search in any particular case. See United States v. Robinson, 414 U.S. 218, 235 (1973). Thus, the lawfulness of Murphy's arrest and, therefore, the validity of the disputed search depends on the existence of probable cause to believe that Murphy had committed an offense. See DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 543 (1987). "'Probable cause exists

when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed.'" Slayton v. Commonwealth, 41 Va. App. 101, 106, 582 S.E.2d 448, 450 (2003) (quoting Purdie v. Commonwealth, 36 Va. App. 178, 185, 549 S.E.2d 33, 37 (2001)).

Relying on Jones v. Commonwealth, 18 Va. App. 229, 443 S.E.2d 189 (1994), Murphy argues that the police did not have probable cause to arrest him for trespassing. In Jones, the owner of the apartment complex posted "no trespassing" signs and communicated to the police several complaints of trespassing and drug dealing on the property. Id. at 230, 443 S.E.2d at 190. Police officers later arrested the defendant for trespassing on the sidewalk of the apartment complex. Id. at 231, 443 S.E.2d at 190. One of the arresting officers testified that he believed the defendant was trespassing "because [the defendant and another man] were 'hanging out' and because [the defendant] ran as their car approached." Id. at 232, 443 S.E.2d at 190. A panel of this Court reversed the defendant's conviction, holding that the information available to the police fell short of probable cause.

> Jones's mere presence with another man on the premises at four o'clock in the afternoon near an automobile parked on a street by an apartment complex was insufficient to establish probable cause to believe that Jones was neither a resident of the apartment complex nor legitimately upon the premises at the invitation of a resident.

Id. at 233, 443 S.E.2d at 191.

We hold that the facts in this case, particularly the location and the day of the week, distinguish this case from Jones, and we further hold that the trial court did not err in finding from these facts that Ratliff had probable cause to believe that Murphy was trespassing. Ratliff observed Murphy and his companions walking across a construction site that was otherwise completely deserted. Signs marked "no trespassing" were visible. It was a Sunday, and no

- 6 -

construction work was in progress. The place where Ratliff saw Murphy was quite different from the apartment complex in Jones, since the residents of an apartment complex and their invited guests might legally be on the premises on any day of the week and at any time of day. Cf. Raab v. Commonwealth, 50 Va. App. 577, 584, 652 S.E.2d 144, 148 (2007) (*en banc*) ("We fail to see how the residential apartment complex in Ewell [v. Commonwealth, 254 Va. 214, 491 S.E.2d 721 (1997),] can be sensibly analogized to a closed, unlit commercial restaurant. Apartment complexes do not close for the night. Residents and guests come and go as they please. Restaurants, on the other hand, can and do close to *everyone.*").[1]

Murphy further argues Ratliff did not have probable cause because Murphy and his companions told Ratliff that the security guard had given them permission to be on the property. This fact might be more persuasive but for the evidence that Ratliff informed the security guard of the presence of Murphy's companions. Ratliff also testified that he informed the security guard of his intention to order Murphy and his companions to keep off the property. After Ratliff had done this, the security guard did nothing to indicate to Ratliff that Murphy and his companions were on the property with the owner's permission, and given that Ratliff's conversation with the security guard took place *before* he arrested Murphy for trespassing, we are not convinced that the trial court erred in holding that Ratliff had probable cause to make the arrest. Moreover, the location within the empty lot where the police first saw Murphy and his companions and other police testimony regarding the direction in which Murphy and his companions were walking provide further support for the trial court's ruling. Wallis testified that he observed Murphy and his companions walking outside of the fence and then saw them inside the fence, even though they were not close to the gate; Wallis believed they had either

---

[1] The question presented in Raab was whether the information available to the police met the analogous, though less demanding, standard of reasonable suspicion. Raab, 50 Va. App. at 581-82, 652 S.E.2d at 146-47.

crawled under the fence or walked through some break in the fence. This conclusion was consistent with Ratliff's testimony that he and Wallis first observed Murphy and his companions coming from the Midlothian Village side of the lot, while both the gate and the security guard were posted on the opposite side, facing Belt Boulevard. Given these circumstances, it was within the discretion of the trial court to reject Murphy's argument that the statement that Murphy had permission from the security guard to be on the property deprived the police of probable cause to believe that Murphy was trespassing. Because Ratliff had probable cause to arrest, his search of Murphy's person incident to that arrest was reasonable under the Fourth Amendment.

## IV.

### Conclusion

For these reasons, we hold that the trial court did not err in denying Murphy's pretrial motion to suppress the cocaine evidence. Murphy's conviction and sentence are affirmed.

Affirmed.
