COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, O'Brien and Raphael


TIMOTHY WAYNE DRAKE

                                        MEMORANDUM OPINION[*]

v.      Record No. 0437-23-3                        PER CURIAM
                                                    MARCH 26, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

(David Eddy, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Matthew J. Beyrau, Assistant
Attorney General, on brief), for appellee.


Timothy Wayne Drake entered a conditional no contest plea to one count of possession of

methamphetamine.  On appeal, he contends that the court erred by denying his motion to suppress.

Having examined the briefs and the record, the panel unanimously holds that oral argument is

unnecessary because "the dispositive issue or issues have been authoritatively decided, and the

appellant has not argued that the case law should be overturned, extended, modified, or reversed."

Code § 17.1-403(ii)(b); Rule 5A:27(b).  Upon review, we affirm the court's judgment.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party

in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

Near midnight on September 30, 2021, Washington County Sheriff's Deputy Mark Nash

saw a Chevy Tahoe parked at a gas station with only its running lights on.  The business was closed,

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

there were no other vehicles in the parking lot, and Deputy Nash knew that the location was "a high drug traffic area." When he approached the vehicle, he saw Drake slumped over in the driver's seat with a syringe stuck in his right hand. Suspecting Drake may have overdosed, the deputy immediately called for medical assistance.

Deputy Nash knocked on the window and when Drake awoke, he asked Drake to roll down the window. Drake struggled with the buttons; eventually, Deputy Nash opened the door and asked if Drake was okay. Drake responded that he "was just taking a nap." Drake, who slurred his speech and appeared "confused," claimed that he was a diabetic but did not need assistance. Drake produced a Tennessee identification card when asked, but he did not have a valid driver's license.

An emergency medical technician (EMT) arrived, examined Drake, and determined that he was alert and did not appear to be in medical distress. Testing established that Drake's blood glucose levels were normal. While the EMT examined Drake, Deputy Nash saw that the syringe that had been in Drake's hand, which contained an orange substance, had fallen to the ground. Deputy Nash asked Drake what was in the syringe. At first, Drake responded that it was insulin, but then stated that he did not know what the syringe contained.

After the EMT left, Deputy Nash and other officers detained Drake and searched the vehicle. Deputy Nash explained that before searching the car, he had seen other syringes in plain view "throughout the vehicle." During the search, the officers found a plastic bag containing a crystal-like substance behind the center console. They also recovered two syringes from inside the vehicle, one containing an unknown substance. After field-testing, the officers determined that the orange substance in the syringe from the parking lot contained methamphetamine, and arrested Drake. Later analysis established that the plastic bag behind the console contained methamphetamine residue.

Drake moved to suppress the evidence. He argued that he was unlawfully seized after the EMT determined that he was not having a medical emergency. He also argued that the officers lacked probable cause to search his vehicle and the syringe recovered in the parking lot. During the suppression hearing, Deputy Nash testified that the orange substance in the syringe "didn't look like it was just prescribed from a doctor." The court sustained Drake's objection to the testimony because the Commonwealth had not established Deputy Nash's expertise in that area.

The court found that based on the totality of the circumstances, the officers had probable cause to search Drake's vehicle. Despite previously ruling during the suppression hearing that Deputy Nash's opinion testimony that the substance in the syringe "didn't look like it was just prescribed from a doctor" was inadmissible, the court considered that Nash "could see in plain view that the substance in the syringe was orange and likely not a substance that was insulin" as part of the basis for its ruling.

ANALYSIS

When challenging a trial court's decision on a motion to suppress, "[t]he appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (alteration in original) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).

Drake argues that the police lacked probable cause to search his vehicle, test the contents of the dropped syringe, and arrest him after the EMT determined that Drake was not suffering from a medical emergency.[1]  He also contends that the court erred "by considering the role the color of the substance in the syringe played in the probable cause analysis because the officer had no basis to determine the significance of the color of the substance."

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "The Fourth Amendment prohibits only unreasonable searches and seizures."  *Thompson v. Commonwealth*, 54 Va. App. 1, 7 (2009) (quoting *James v. Commonwealth*, 22 Va. App. 740, 745 (1996)).  "Warrantless searches, of course, are per se unreasonable, subject to a few well-defined exceptions."  *Moore*, 69 Va. App. at 36 (quoting *Abell v. Commonwealth*, 221 Va. 607, 612 (1980)).

The Supreme Court of the United States has repeatedly "held that the search of an automobile can be reasonable without a warrant."  *Collins v. Virginia*, 584 U.S. 586, 591 (2018).  The exception to the warrant requirement exists because "the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible."  *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976).  Accordingly, the Supreme Court has held that a warrantless search of an automobile supported by probable cause does not violate the Fourth Amendment.  *United States v. Ross*, 456 U.S. 798, 809 (1982); *see also California v. Acevedo*, 500 U.S. 565, 580 (1991) (the police may search a vehicle, and containers within it, without a warrant if they have probable cause to believe the vehicle contains contraband).  "The right to search and the validity of the seizure . . . are dependent on the reasonable cause the seizing officer has for belief that the contents of the

---

[1] Drake does not challenge Deputy Nash's initial approach of his vehicle.

automobile offend against the law." *Chambers v. Maroney*, 399 U.S. 42, 49 (1970) (quoting *Carroll v. United States*, 267 U.S. 132, 158-59 (1925)).

Probable cause, "as the very name implies, deals with probabilities." *Slayton v. Commonwealth*, 41 Va. App. 101, 105 (2003) (quoting *Derr v. Commonwealth*, 242 Va. 413, 421 (1991)). "Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed." *Id.* at 106 (quoting *Purdie v. Commonwealth*, 36 Va. App. 178, 185 (2001)). It does not "demand any showing that such a belief be correct or more likely true than false." *Id.* (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). "Perhaps the best that can be said generally about the required knowledge component of probable cause for a law enforcement officer's evidence search is that it raise a 'fair probability' or a 'substantial chance' of discovering evidence of criminal activity." *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 371 (2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 244 n.13 (1983)). "Under long-standing Fourth Amendment jurisprudence, a police officer may, before making an arrest and without obtaining a search warrant, search a vehicle . . . so long as the officer has probable cause to do so." *Curley v. Commonwealth*, 295 Va. 616, 621 (2018).

"The theory of the plain view doctrine is that an individual has no reasonable expectation of privacy in items that are in plain view." *Daniels v. Commonwealth*, 69 Va. App. 422, 435 (2018) (quoting *Commonwealth v. Thornton*, 24 Va. App. 478, 483 (1997)). "Thus, police observation of objects in plain view does not implicate the Fourth Amendment so long as the police are legitimately in the place where they viewed the objects." *Gibson v. Commonwealth*, 50 Va. App. 744, 749 (2007). When the police lawfully observe what they believe to be a

controlled substance in plain view inside a vehicle, they possess probable cause to search the car. *See Fox v. Commonwealth*, 213 Va. 97, 100 (1972).

Here, when Deputy Nash approached Drake's parked vehicle late at night at a closed business, he immediately saw Drake unconscious in the driver's seat with a syringe injected in his hand. Deputy Nash knew that the location was a "high drug traffic area." When Drake awoke, he struggled to operate his window, slurred his speech, and appeared "confused." Drake did not report having a diabetic episode and instead stated that he was "just taking a nap." Drake exited the vehicle, and the syringe fell to the ground. Drake first claimed that the syringe contained insulin, but he later stated that he did not know what was in the syringe. Deputy Nash saw additional syringes in plain view on the car's floorboard. The EMT examined Drake and determined that his glucose level was within the normal range, supporting Deputy Nash's belief that Drake was not experiencing a medical emergency and had instead been using illegal narcotics. Based on his training and experience, Deputy Nash suspected that contraband would be found in Drake's vehicle. Considering the totality of the facts and circumstances, the record supports the court's conclusion that Deputy Nash had probable cause to search Drake's vehicle, the contents of the syringe initially in Drake's hand, and to arrest Drake.

Assuming without deciding that the court improperly considered Deputy Nash's opinion that the color of the substance in the syringe suggested that it was not insulin or a prescribed medication, we find any error was harmless. If no federal constitutional issue is raised on appeal, we review a decision to admit or exclude evidence under the standard for non-constitutional harmless error provided in Code § 8.01-678. *Clay v. Commonwealth*, 262 Va. 253, 259 (2001). "Under that standard, the court 'determine[s] whether there has been a fair trial on the merits and whether substantial justice has been reached [by] decid[ing] whether the alleged error substantially influenced the [fact finder]. If it did not, the error is harmless.'" *Haas*

*v. Commonwealth*, 299 Va. 465, 467 (2021) (first, second, and third alterations in original) (quoting *Clay*, 262 Va. at 259).

As discussed above, there was ample evidence establishing probable cause, even without Deputy Nash's testimony about the color of the substance in the syringe. Thus, any error in considering the testimony had "but slight effect." *Commonwealth v. Kilpatrick*, 301 Va. 214, 216 (2022) (quoting *Clay*, 262 Va. at 260).

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*