COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


CELESTEEN VIOLA YANCEY, S/K/A
 CELESTINE V. YANCY
                                         OPINION BY
v.    Record No. 0271-98-2          JUDGE RUDOLPH BUMGARDNER, III
                                          AUGUST 31, 1999
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      James E. Kulp, Judge

        Anthony G. Spencer (C. David Whaley;
        Morchower, Luxton & Whaley, on briefs), for
        appellant.

        Steven A. Witmer, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


     Celestine V. Yancy appeals her conviction at a bench trial

of possession of cocaine with intent to distribute in violation

of Code § 18.2-248.  She argues that the trial court erred in

denying her motion to suppress.  We conclude the officers had

probable cause to arrest the defendant, they seized the evidence

lawfully, and the trial court properly denied the motion to

suppress.  Accordingly, we affirm the conviction.

     On appeal, we view the evidence in the light most favorable

to the Commonwealth, granting to it all reasonable inferences

fairly deducible therefrom.  See Higginbotham v. Commonwealth,

216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  This Court does

not substitute its judgment for that of the trier of fact, see Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992), and the trial court's judgment will not be set aside unless plainly wrong or without evidence to support it. See Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998). The credibility of the witnesses and the weight to be accorded their testimony are matters solely for the fact finder who can accept or reject the testimony in whole or in part. See Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

So viewed, the evidence established that state police officers were interdicting narcotics traffic at the Amtrak station in Henrico County. The officers had received information from New York that two individuals, a male and female, had purchased one-way tickets to Richmond only ten minutes before departing. The officers looked for abnormal behavior by a couple disembarking together the train from New York. Investigator Irwin saw that the defendant and codefendant, Quinton L. Hunley, quickly exited the crowded train, walked side-by-side through the crowd faster than the other travelers, and always looked straight ahead. Their very quick pace, lack of conversation, and straight-ahead focus attracted Irwin's attention. One officer described the defendant as "determined to get through the building."

Irwin followed the two through the terminal and approached them in the parking lot. Sergeant McLean accompanied him outside. Hunley carried a brown and gold tote bag at all times. The defendant carried a leather satchel and a red, white and blue cloth zippered bag. As they exited the terminal, she handed Hunley the red, white and blue bag. Irwin identified himself, announced that he was interdicting narcotics and firearms traffic into Richmond, and asked if they would cooperate in the effort. Both said "yes," but the defendant "became visibly, very visibly afraid or scared at that point. She was trembling. Her speech was [] very low and somewhat stumbling." Irwin told the two that he was not arresting or detaining them but asked if they would be willing to answer some questions. They indicated they were willing to cooperate.

Irwin first asked if he could see their train ticket receipts. Hunley looked at the defendant, searched his pockets, but did not find their tickets. The defendant made no attempt to search for tickets. The two produced identification when Irwin asked for it, and the defendant volunteered that they had arrived from New York. When asked if the bags they were carrying belonged to them, Hunley stated, "they're our bags." The two suspects denied carrying drugs or guns. Irwin then asked consent to search the bags. When the defendant indicated that she felt he was interfering with her rights, Irwin reiterated that they were not under arrest. The defendant

consented to a search but stated, "I really don't want you going through my bags, but I will show you what's in the bags."

The defendant took the red, white and blue bag back from Hunley, unzipped it, and started moving the contents around. McLean saw two shoeboxes for children's hiking boots, which the defendant indicated were for her children. He also saw a new pair of boots loose in the bag, but both boxes appeared to have weight in them despite the fact that one pair was not in its box. McLean told the defendant that he appreciated her showing them the contents, but for officers' safety he preferred to search the bag himself.

The group moved to a less conspicuous location in the parking lot near a truck when Hunley said he was embarrassed by being searched in the middle of the lot. The defendant zipped up the red, white and blue bag, and Hunley carried it and the brown and gold bag to the truck. As they walked toward it, the defendant remarked, "they even know what kind of truck we drive."

Irwin asked permission to pat-down both suspects for weapons. While a female agent patted down the defendant, Irwin kneeled down in front of Hunley's brown and gold bag. He looked up at Hunley while kneeling over the bag and asked if he could search. The defendant said "yes"; Hunley said, "go for it. You're just doing your job," with his "head hung down." Irwin unzipped the brown and gold bag, saw a blanket, moved it aside,

and saw what appeared to be a garbage bag. He reached into the tote bag and felt two hard, rectangular objects in the garbage bag. Irwin pulled out the garbage bag, which was knotted. He asked permission to untie the knot. Hunley replied, "go for it, you're just doing your job." Irwin retrieved two six-by-two inch rectangular blocks wrapped in duct tape from the bag. The wrapping was consistent with illegal narcotics packaging.

As Irwin held up the two rectangular items found in defendant's brown and gold bag, Hunley gave a "very deep sigh" and shook his head. Irwin announced that he believed the bricks were cocaine. The officers arrested both suspects, handcuffed them, and escorted them to an office in the station for further investigation. A field test conducted at the station indicated that the items were in fact cocaine. At that moment, the defendant volunteered, "It's mine." One of the shoeboxes in the red, white and blue bag contained a third brick. The drugs weighed 6.6 pounds in all.

During the search incident to arrest, the officers recovered a small amount of currency, a pager, and two train ticket stubs from New York to Richmond. The ticket stubs were in Hunley's pocket and were issued in the name of Delores Russell Anne. Neither Hunley nor the defendant possessed identification in that name. A cellular telephone, $2,000 in small bills, and a piece of paper with names and dollar amounts on it were found in the defendant's leather satchel. An expert

testified that the cell phone and pager were significant when found with drugs because drug dealers often use them in making sales. He also stated that 6.6 pounds of drugs was inconsistent with personal use and New York was a source city for contraband entering Richmond.

The defendant contends the trial court improperly denied her suppression motion because the officers seized the evidence after an unlawful arrest. She contends there is no evidence that she was aware of what was in Hunley's brown and gold bag. She continues that the officers did not have probable cause to arrest her until they found cocaine in the red, white and blue bag, but that occurred after she was formally arrested. Therefore, she concludes the evidence was illegally seized as the "fruit of the poisonous tree," and her statement claiming to own the drugs was not admissible. We find this argument without merit.

The issue of whether the officers had probable cause to make a warrantless arrest involves questions of both law and fact and is reviewed de novo on appeal. See McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 691 (1996)). If the officers had probable cause to arrest, the subsequent search was lawful. See Chimel v. California, 395 U.S. 752, 763 (1969). In determining whether probable cause exists, the test is whether at the time of arrest the officers

had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense has been or is being committed.  See Brinegar v. United States, 338 U.S. 160, 175-76 (1949).  The Commonwealth must show, based on a totality of circumstances, "a probability or substantial chance of criminal activity" to establish probable cause.  Ford v. City of Newport News, 23 Va. App. 137, 143-44, 474 S.E.2d 848, 851 (1996).  "Trained and experienced police officers may be able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer."  Richards v. Commonwealth, 8 Va. App. 612, 616, 383 S.E.2d 268, 271 (1989).

The defendant acted suspiciously as she and her companion disembarked the train from New York, a known source for drugs entering Richmond.  The two walked very quickly through the crowd in a manner that singled them out to the officers.  She became visibly nervous when the officers explained that they were interdicting narcotics traffic.  When asked for their train ticket stubs, the defendant did nothing as Hunley searched for them, which indicated she knew he had her ticket stub.

She started carrying the red, white and blue bag but handed it to Hunley.  Both suspects carried that bag.  Hunley stated they jointly possessed the bags:  "they're our bags."  (Emphasis added).  As the officer stood over the luggage, he asked both the defendant and Hunley if he could search their bags.  They both consented to the search.  The defendant consented to the

search of both bags:  first, the search of the red, white and blue cloth bag; then, of the brown and gold tote bag.  After consenting to the search, the defendant herself displayed the contents by moving them around in the bag rather than by permitting the officers to look for themselves.  The officer saw a loose pair of hiking boots and its box.  Despite the fact that the boots were loose in the bag, the shoebox appeared to have weight.  When the officers agreed to move to another area of the parking lot, the defendant stated, "they even know what kind of truck we drive."

The actions and statements of the two permitted an inference that their trip was a joint enterprise.  The demeanor, statements, and actions of the defendant permitted an inference that she worried that the police knew they were transporting drugs.  The defendant separately gave the officers consent to search each bag.  That was evidence that she asserted ownership and dominion over them and claimed at least a joint interest in both bags.  The size and shape of the empty, but weighted, shoebox, when compared with the size and shape of the bricks of probable narcotics found in the brown and gold bag, permitted the inference that the weight in the shoebox might be drugs.

From the accumulated evidence, we hold that the officers had developed probable cause to believe the defendant was transporting jointly with Hunley the drugs found in the brown and gold bag.  The trial court properly denied the motion to

suppress because the officers had probable cause when they arrested the defendant.  Accordingly, we affirm her conviction.

<u>Affirmed.</u>

Benton, J., dissenting.

Consistent with constitutional standards, a police officer properly may make a warrantless arrest if the officer has probable cause to believe an individual has committed a felony. See United States v. Watson, 423 U.S. 411, 423 (1976). The rule is also well established, however, that where probable cause is lacking at the moment of arrest, the arrest is illegal. See Beck v. Ohio, 379 U.S. 89, 91 (1964). Any evidence seized pursuant to that illegal arrest must be excluded. See Mapp v. Ohio, 367 U.S. 643 (1961). See also Ford v. City of Newport News, 23 Va. App. 137, 145, 474 S.E.2d 848, 852 (1996). As applicable to this case, the United States Supreme Court has refined these principles as follows:

> Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

Ybarra v. Illinois, 444 U.S. 85, 91 (1979).

When the officers arrested Celestine Yancy, the officers had found packages they suspected to contain drugs in the brown and gold luggage they had seen Quinton Hunley carry. No testimony established that Yancy had been carrying that brown and gold luggage. Prior to arresting Yancy, the officers made no inquiry to determine whether Yancy or Hunley claimed

ownership of that piece of luggage.  They knew that Hunley solely had carried the brown and gold luggage from the train to the parking lot.  However, when the officers arrested Yancy, she had not claimed ownership of the brown and gold luggage.  In addition, Yancy had clearly asserted her possessory interest only in another piece of luggage -- the red, white and blue luggage.  She opened it for the police, reached into it, and moved its contents.  When the police arrested Yancy, they had not searched the red, white and blue luggage and, thus, had no knowledge of its contents.

The officers arrested Yancy because she was with Hunley, who was carrying the luggage in which they had found the suspected drugs.  Clearly, upon discovering the suspected drugs in the luggage Hunley carried, the officers had probable cause to arrest Hunley.  However, they lacked the level of information necessary for probable cause to arrest Yancy.  As the Supreme Court ruled in Ybarra, "a person's mere propinquity to others suspected of criminal activity does not, without more, give rise to probable cause to search [or arrest] that person."  444 U.S. at 91.  Although the officers had enough suspicion "to adopt an intermediate response," such as a Terry detention, Adams v. Williams, 407 U.S. 143, 145 (1972), they lacked probable cause to then arrest Yancy.  See McMillon v. Commonwealth, 212 Va. 505, 509, 184 S.E.2d 773, 775 (1971) (ruling that "the fact that

a person consorts with drug addicts does not, of itself, create probable cause to arrest that person as a narcotics user").

Relying upon a description of the purposeful manner in which Hunley and Yancy walked through the train station, the majority opinion concludes that Yancy and Hunley acted suspiciously as they disembarked the train and left the terminal.  That conduct, however, did not distinguish Yancy and Hunley from a great majority of the travelling public.  Furthermore, the police officer who stopped them and asked permission to speak to them testified that their conduct had not led him to believe Yancy and Hunley were involved in criminal activity.  All of the attendant circumstances, including the discovery of the suspicious package in the luggage Hunley was carrying, provided no more than a suspicion concerning Yancy.

Because the arrest was made without probable cause, I would hold that the trial judge erred in admitting the unlawfully seized evidence.  See id.  I dissent.