COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Frank
Argued at Chesapeake, Virginia


DARRYL LEE KNIGHT

MEMORANDUM OPINION* BY
v.    Record No. 0029-00-1        JUDGE ROBERT P. FRANK
                                   DECEMBER 19, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                   H. Thomas Padrick, Jr., Judge

          Richard Carl Clark, Assistant Public Defender
          (Patrick J. McKenna, Assistant Public
          Defender, on brief), for appellant.

          Linwood T. Wells, Jr., Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.


     Darryl Lee Knight, appellant, was convicted in a bench trial,

of robbery in violation of Code § 18.2-58, conspiracy in violation

of Code § 18.2-22, and use of a firearm in the commission of a

felony in violation of Code § 18.2-53.1.  On appeal, he contends

the trial court erred in denying his motion to suppress.  For the

reasons stated herein, we reverse the judgment of the trial court.

                    I.  BACKGROUND

     At a hearing on appellant's motion to suppress, Officer James

Marafka testified that during the early evening hours of February

27, 1999, he received a radio message that a robbery had just

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

occurred in an apartment complex near Birdneck Road and Route 44, approximately one-quarter of a mile from his location. Marafka was told that four subjects were involved in the robbery. All of the suspects were described as young black males wearing dark clothes.

Marafka said that as he was headed toward the scene of the robbery, another officer radioed that he had seen suspects running south from the scene to an area that Marafka had just passed. Marafka said he then made a "U-turn" and drove to that area, setting up a "perimeter."

At that point, Marafka said he saw someone running away from him, toward the back of a house. Marafka then showed Officer Carila, a K-9 officer, the direction in which the suspect started running. Carila and his dog began to track in the direction the suspect ran.

Marafka testified he followed Carila and then received a radio message from Officer Garrett "that he had a subject running across the street and had him on Birdneck Road, which was the direction we were heading."

When Marafka and Carila arrived at Birdneck Road, Officer Garrett was detaining a black male, who was later determined to be appellant.

Marafka testified that only thirty seconds elapsed from the time he saw the person running toward the back of the house to the

-

time when he received the message that appellant had been stopped. No one else was in the area.

Marafka said that appellant matched the general description of the robbery suspects. He was wearing dark clothing and a black sweater or sweatshirt was next to him. Marafka said appellant was sweating or "winded." On cross-examination, Marafka admitted he could not tell if the person he saw running toward the back of the house was appellant. Marafka stated he handcuffed appellant and placed him in the back of a police car because appellant matched the description broadcast earlier. At that point, Marafka stated appellant was "investigatively detained" and was not free to leave.

Officer Carila testified he received information over the radio that a robbery was in progress. Before he arrived, however, another police unit radioed him that several subjects were running in the area of the school at Route 44 and Birdneck Road. He testified that, as he came upon the area, he saw a suspect running. He then deployed his dog. The dog, however, failed to pick up a track, and the suspect ran between two houses toward Birdneck Road. Officer Marafka told Carila he had seen the suspect and showed Carila where he last saw the man. Carila and the dog began tracking at that point.

Carila testified that when he reached the front of the houses, he saw a black male detained by another officer and a citizen in the median of Birdneck Road. Carila stopped the dog

-

from tracking at Birdneck Road because "it wasn't necessary for me to endanger my dog in crossing the street at that point with traffic." However, appellant was in the direct line of the dog's track.

Detective Annette Pennypacker testified she took the victim of the robbery, Cynthia Sorensen, to the location where appellant was detained to give Sorensen the opportunity to identify appellant. However, Sorensen was unable to identify appellant as one of the men who robbed her. Pennypacker testified, "She said she couldn't tell for sure." After speaking to another suspect, Pennypacker ultimately directed the officers to take appellant to the detective bureau "for further interview."

Officer Marafka testified he transported appellant to the detective bureau. When asked, on cross-examination, what items were taken from appellant, he stated, "[T]hat would have been done at headquarters."

At the detective bureau, appellant was advised of his Miranda rights and was interrogated. Appellant, according to Pennypacker, then implicated himself and others in the robbery.

In his suppression argument at trial, appellant conceded his initial detention by the police was proper. Yet, he contended the police had no probable cause to "arrest" him when he was taken into custody, handcuffed, and placed in the rear of the police vehicle. He further contended that, when the victim failed to

-

identify him as the perpetrator of the robbery, the police were obligated to release him from custody.

The trial court found there was probable cause to arrest, denied the motion to suppress, accepted appellant's conditional plea of guilty, and found appellant guilty of robbery, conspiracy, and use of a firearm.

## II.  ANALYSIS

On appeal, appellant argues the probable cause issue raised in the trial court and also contends there was no "reasonable suspicion" to permit the initial stop.  We will not address the validity of the initial stop since appellant conceded at trial that the initial detention, based on the "be on the lookout" was proper.  Appellant is bound by that concession and cannot raise the issue.  Timbers v. Commonwealth, 28 Va. App. 187, 194, 503 S.E.2d 233, 236 (1998); Rule 5A:18.

> At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989).  On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom.  See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991); see also Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L.Ed.2d 911 (1996).  We review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case.  See Shears v. Commonwealth, 23

-

Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas, 517 U.S. at 699, 116 S. Ct. at 1659.

Reel v. Commonwealth, 31 Va. App. 262, 265, 522 S.E.2d 881, 882 (2000).

> Police-citizen confrontations generally fall into one of three categories. Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 869-70 (1992); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988). First, there are consensual encounters which do not implicate the Fourth Amendment. Iglesias, 7 Va. App. at 99, 372 S.E.2d at 173. Next, there are brief investigatory stops, commonly referred to as "Terry" stops, which must be based upon reasonable, articulable suspicion that criminal activity is or may be afoot. United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L.Ed.2d 1 (1939). Finally, there are "highly intrusive, full-scale arrests" or searches which must be based upon probable cause to believe that a crime has been committed by the suspect. Id.; see also Wechsler v. Commonwealth, 20 Va. App. 162, 169, 455 S.E.2d 744, 746-47 (1995).

McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).

> "'Whether a warrantless arrest was constitutionally valid depends upon whether, at the moment the arrest was made, the officers had probable cause to make it.'" Jefferson v. Commonwealth, 27 Va. App. 1, 12, 497 S.E.2d 474, 479 (1998) (citations omitted). If so, such "arrest of a suspect . . . is a reasonable intrusion under the Fourth Amendment" and, "that intrusion being lawful, a search incident to the arrest requires no additional justification." United States v. Robinson, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973). Conversely, however, "a

-

warrantless arrest that is not based upon probable cause is unconstitutional and evidence seized as a result of an unconstitutional arrest is inadmissible, without regard to the officer's good faith and reasonable belief that he was not factually or legally mistaken."  Ford v. City of Newport News, 23 Va. App. 137, 145, 474 S.E.2d 848, 852 (1996).

"'[P]robable cause is measured against an objective standard.'"  Taylor v. Commonwealth, 10 Va. App. 260, 266, 391 S.E.2d 592, 595-96 (1990) (citations omitted).  It "'exists where "the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.'"  Jefferson, 27 Va. App. at 12, 497 S.E.2d at 479 (citation omitted).  "'In assessing an officer's probable cause for making a warrantless arrest, no less strict standards may be applied than are applicable to a magistrate's determination that an arrest warrant should issue.'"  Ford, 23 Va. App. at 144, 474 S.E.2d at 851 (citation omitted).

Golden v. Commonwealth, 30 Va. App. 618, 622-23, 519 S.E.2d 378, 379-80 (1999).  "The Commonwealth must show, based on a totality of circumstances, 'a probability or substantial chance of criminal activity' to establish probable cause."  Yancey v. Commonwealth, 30 Va. App. 510, 516, 518 S.E.2d 325, 328 (1999) (quoting Ford, 23 Va. App. at 143-44, 474 S.E.2d at 851).

"[I]f the police have probable cause to effect an arrest, a limited search may be justified even in the absence of a formal arrest."  Poindexter v. Commonwealth, 16 Va. App. 730, 733-34, 432 S.E.2d 527, 529 (1993) (citing Cupp v. Murphy, 412 U.S. 291,

-

295-96, 93 S. Ct. 2000, 2003-04, 36 L.Ed.2d
900 (1973)) (footnote omitted).  "So long as
probable cause to arrest exists at the time
of the search . . . it is unimportant that
the search preceded the formal arrest if the
arrest 'followed quickly on the heels of the
challenged search.'"  Id. at 733, 432 S.E.2d
at 529 (quoting Carter v. Commonwealth, 9
Va. App. 310, 312, 387 S.E.2d 505, 506-07
(1990)) (additional citation omitted).

Wallace v. Commonwealth, 32 Va. App. 497, 505, 528 S.E.2d 739,

742-43 (2000).  "If the officer lacked probable cause to arrest,

however, any evidence seized pursuant to the arrest will be

excluded from trial."  Clarke v. Commonwealth, 32 Va. App. 286,

294, 527 S.E.2d 484, 488 (2000) (citing Lugar v. Commonwealth,

214 Va. 609, 611, 202 S.E.2d 894, 897 (1974)).

In this case, the initial detention was valid through, and

including, Sorenson's attempt to identify appellant based on the

"be on the lookout" that was broadcast on the police radios.[1]

However, we find the initial detention never ripened into the

probable cause necessary for the police to involuntarily

transport appellant to the detective bureau.  See Dunaway v. New

York, 442 U.S. 200, 206-07 (1979) (holding the involuntary

transportation of Dunaway to the police station constituted a

seizure within the meaning of the Fourth Amendment and rejecting

the state's argument that, although the police lacked probable

cause, the seizure was permissible because the police had "a

---

[1] We do not address whether Sorenson's inability to identify
appellant terminated the reasonable suspicion.

-

'reasonable suspicion' that [Dunaway] possessed 'intimate knowledge about a serious and unsolved crime'"). Detective Pennypacker testified she directed that appellant be taken to the detective bureau for "further interview" after she spoke to another suspect. However, she did not testify as to what the other suspect told her with regard to appellant. The police based their probable cause conclusion on appellant's match with the description broadcast in the "be on the lookout," Sorenson's statement that she could not tell for sure whether he was one of the men who committed the robbery, and some unknown statement made to Detective Pennypacker by another suspect. We find that, on the record before us, the facts and circumstances within the officers' knowledge were not sufficient to warrant the belief that appellant had committed the robbery and, thus, the officers did not have probable cause to arrest appellant. We, therefore, hold that the incriminating statements made by appellant at the detective bureau and the items obtained in the search of appellant's person at the detective bureau should have been suppressed.

For these reasons, we reverse the convictions and remand for further proceedings if the Commonwealth be so advised.

<u>Reversed and remanded.</u>

-