COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Kelsey and Beales
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.      Record No. 1046-08-2       JUDGE RANDOLPH A. BEALES
SEPTEMBER 30, 2008

JERMAINE MARVIN MOODY


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Clarence N. Jenkins, Jr., Judge

Gregory W. Franklin, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellant.

Kevin M. Schork for appellee.


Jermaine Marvin Moody was charged with possession of a firearm by a convicted felon, a

violation of Code § 18.2-308.2.  Prior to his trial, Moody filed with the court a motion to suppress

"all evidence" collected during his interaction with the police, based on violations of his Fourth

Amendment rights.  After a hearing, the trial court found Moody had been arrested without probable

cause and granted his motion to suppress.  On appeal, the Commonwealth argues that the trial court

erred in granting the motion to suppress the firearm that was found at the scene and the statements

that Moody gave to the police.  We find the officers had probable cause to arrest Moody, and so we

reverse the trial court's ruling on the motion and remand this case for trial.

I.  Background

Officer Rotondi, Officer Dansky, and a third uniformed officer were working together

around midnight on June 13, 2007, in the City of Richmond.  After dealing with an unrelated

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

disturbance, a citizen approached Officer Rotondi and said, "there was a male at the corner of 18th and Franklin that he believed to have a gun . . . [because] he kept making movements as if he had a gun tucked in his waistband, where he kept adjusting." The citizen described the male's clothing. The officers did not know the informant, but Officer Rotondi personally talked to him.

The officers immediately walked to the corner of 18th and Franklin, which was half a block away. There, they observed Moody, whose clothing exactly matched the description provided by the informant. No other person was in that area that the informant had just described. Moody was in the road beside the front, passenger-side wheel well of a parked, white SUV. The officers did not recognize or know Moody.

Moody started walking into the street, away from the officers. He appeared nervous, "looking around kind of like somebody was following him." Officer Dansky approached Moody in the middle of the street and asked "if he could talk to him." Moody stopped, said "sure," and added that he did not have any weapons. Moody started taking off the shirts that he was wearing, but the officers said they would just pat him down so he did not need to undress. While he had his shirts up, the officers saw that Moody did not have a gun in his waistband. The officers then patted down Moody and did not find any weapons.

While Officer Dansky and Moody were still talking, Officer Rotondi found a handgun "sitting on the front-right tire" of the SUV, in the same area where Moody had been standing. Upon discovery of the gun, the officers placed Moody in handcuffs, Mirandized[1] him, and asked him "whose gun it was." Moody then made incriminating statements.

## II. The Firearm

The parties agree that the firearm, found sitting on the wheel of the SUV, was abandoned property, "'expose[d] to the public,'" and should not have been suppressed. California v.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

<u>Greenwood</u>, 486 U.S. 35, 41 (1988) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 351 (1967)).

Therefore, this evidence may be admitted at Moody's trial on this charge, and we, thus, reverse the

trial court on the suppression of the firearm.

### III. The Statements

> Whether an officer has probable cause to arrest an individual in the absence of a warrant is determined under an objective test based on a reasonable and trained police officer's view of the totality of the circumstances. <u>See</u> <u>Parker v. Commonwealth</u>, 255 Va. 96, 106, 496 S.E.2d 47, 53 (1998). On appellate review, we give deference to the historical facts determined by the trial court, but we review *de novo* whether the legal standard of probable cause was correctly applied to the historical facts. <u>Jackson v. Commonwealth</u>, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004); <u>see</u> <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996). To determine whether probable cause exists, we "will focus upon 'what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.'" <u>Taylor v. Commonwealth</u>, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981) (quoting <u>Hollis v. Commonwealth</u>, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976)).

<u>Brown v. Commonwealth</u>, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005).

On appeal, the Commonwealth argues that Moody was not arrested when the officers put

handcuffs on Moody and read him the <u>Miranda</u> warnings, but instead the officers were simply

engaging in a <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), stop. At the suppression hearing, however, the

Commonwealth argued that the statements should not be suppressed "[b]ecause at the time he made

the statements he was in lawful detention for arrest for having a firearm." The prosecutor insisted

that the officers did not need to stop Moody and investigate the matter further. He told the trial

court, "The investigation [was] over. We are here talking about an arrest." He then explained,

"After the gun [was] recovered, that's when he is placed under arrest and advised of Miranda and

made a statement."[2] As the Commonwealth appeared to concede below that Moody was under

---

[2] After the trial court found that the officers did not have probable cause for an arrest, the prosecutor began arguing, "Miranda [goes] to detention[,] not arrest . . . . [T]his is a Terry stop

arrest when he was handcuffed and Mirandized,[3] in this particular situation, we assume without deciding that the trial court ruled correctly when it found Moody was under arrest before he made any incriminating statements to the officers.

We must next consider whether the officers had probable cause to arrest Moody.
Probable cause

> "exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Schaum v. Commonwealth, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975) (citing Draper v. United States, 358 U.S. 307 (1959); Oglesby v. Commonwealth, 213 Va. 247, 250, 191 S.E.2d 216, 218 (1972)).

> In reviewing a probable cause determination we use "an objective test based on a reasonable and trained police officer's view of the totality of the circumstances." Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005); see also Yancey v. Commonwealth, 30 Va. App. 510, 516, 518 S.E.2d 325, 328 (1999) ("When determining whether probable cause supports an arrest, we do not examine each element separately for a determinative fact, but instead consider the totality of the circumstances."). Probable cause does not require "an actual showing" of criminal behavior; "[r]ather, [the Commonwealth need only show] a probability or substantial chance of criminal behavior." Purdie v. Commonwealth, 36 Va. App. 178, 185, 549 S.E.2d 33, 37 (2001) (citations omitted). Moreover, it is well settled that the "arresting officer need not have in hand evidence which would suffice to convict. The quantum of information which constitutes probable cause . . . must be measured by the

---

and Terry investigation with new evidence, the gun, corroborating the tipster. Is the Court finding there is not a basis for Terry detention at this point?" Although the Commonwealth had argued the pat down was either consensual or a legitimate Terry stop, the prosecutor had not previously characterized the handcuffing, Mirandizing, and questioning of Moody as a Terry stop. The trial court reaffirmed its finding that this "second" interaction was an arrest for which the officers did not have probable cause.

[3] Moody did not argue that the officers improperly Mirandized him – nor did he claim that the officers failed to secure a waiver of his right to remain silent before he made the incriminating statements that he moved to suppress in his pretrial motion.

- 4 -

facts of the particular case." Wong Sun v. United States, 371 U.S. 471, 479, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

Jones v. Commonwealth, 51 Va. App. 730, 736-37, 660 S.E.2d 343, 345-46 (2008) (alterations in original).

Here, the officers personally talked with a citizen informant, who approached them with information unrelated to the crime they originally were investigating. Unlike the police in Florida v. J.L., 529 U.S. 266 (2000), Officer Rotondi spoke face-to-face with this informant and observed his demeanor. The informant described what he saw – a person grabbing his pants as if he had a firearm concealed in the waistband. The informant was then standing only a half block from the corner where he had just observed this person. The officers started walking, and, within fifteen seconds of receiving this information, the officers could see the spot where the informant had observed a man whose description matched Moody. The only person in the area was Moody, and he matched the informant's description exactly. Based on the officer's observation of and discussion with the informant, the officers' ability to quickly respond, and their observation of Moody in the exact place and exact clothes described by the citizen informant, the information provided to the police by the citizen informant was credible and reliable. See Scott v. Commonwealth, 20 Va. App. 725, 728-29, 460 S.E.2d 610, 612-13 (1995) (discussing the credibility of unnamed informants).

Before the officers approached Moody, he was looking around and appeared nervous. As the officers approached him, Moody told the officers that he did not have any weapons – before they even had an opportunity to ask him any questions. Moody also began to undress before the officers had a chance to ask him anything, apparently to prove that he did not have any weapons.

Although the officers did not find a weapon during the pat-down search of Moody, Officer Rotondi found a firearm in plain sight on the front passenger's side wheel of the SUV.

Moody had been standing beside that SUV in this exact spot when the officers first observed him only minutes before.

In short, based on the totality of these circumstances, we find the officers had probable cause to arrest Moody. An informant, who was right around the corner, had seen and described a man dressed just like Moody, acting as though he had a concealed weapon. When the officers first encountered Moody, he seemed nervous and determined to convince the officers that he did not have a gun, even though the officers never mentioned that they suspected he possessed a firearm. Officer Rotondi then found a gun in the exact place Moody had been standing when the officers first spotted him. The gun, which was a valuable item, was clearly visible, left where anyone walking by could have taken it. The police could infer that Moody placed the gun in such an odd place in an attempt to get rid of the weapon before they caught him with it in his pants. Based on all these circumstances, the police had probable cause to believe that the weapon found on the wheel had previously been hidden in Moody's waistband.[4] See e.g., Leeth v. Commonwealth, 223 Va. 335, 339, 288 S.E.2d 475, 477 (1982) (finding an officer had probable cause to stop a driver for using a radar detector based on the driver's actions even though the officer had not observed the radar detector). Therefore, as probable cause existed to arrest Moody, he was not improperly seized when he made the incriminating statements to the police, and we, thus, reverse the trial court's suppression of those statements.

---

[4] We do not comment on whether this evidence would be sufficient to convict Moody. Probable cause need not rise to the level of proof necessary for a conviction. See Myers v. Commonwealth, 43 Va. App. 113, 119, 596 S.E.2d 536, 538-39 (2004) (explaining that proof beyond a reasonable doubt is a higher standard than probable cause).

## IV. Conclusion

We find the trial court erred in suppressing the firearm and the statements that Moody made to the officers. We overturn the trial court's order and remand the case for trial on the possession of a firearm by a felon charge.

<u>Reversed and remanded.</u>