COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Friedman and Lorish
Argued at Salem, Virginia

CATHERINE B. VIDUNAS

v.      Record No. 2008-24-3

CAMP MONT SHENANDOAH LIMITED, ET AL.

MEMORANDUM OPINION* BY
JUDGE FRANK K. FRIEDMAN
NOVEMBER 5, 2025

FROM THE CIRCUIT COURT OF BATH COUNTY
Edward K. Stein, Judge

Gregory S. Hooe (Steven G. Friedman; Marks & Harrison, P.C., on
briefs), for appellant.

John L. Cooley (John C. Singleton; Law Office of Cooley and
Associates PLC; Singleton Law, on brief), for appellees.


Catherine B. Vidunas appeals the circuit court's order granting the special plea in bar

filed by defendants Camp Mont Shenandoah Limited and Ann Warner.  She contends that the

circuit court erred by finding that her dog bite injury arose out of her employment and that her

exclusive remedy therefore lay in the Workers' Compensation Act.  She also appeals the circuit

court's order denying her motion for reconsideration arguing that the defendants failed to perfect

their cross-appeal of the district court's denial of their plea in bar.  We affirm.

BACKGROUND

The facts are largely undisputed.  Warner was the controlling shareholder of Camp Mont

Shenandoah, "a small, traditional, all-girls camp."  Warner had two dogs, Rollins and Otis.  Otis

was a border collie whom Warner had acquired in February 2012, when he was eight weeks old.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

He bit someone when he was a puppy but had not bitten anyone between then and August 2021. Otis was with Warner "[m]ost of the time" when Warner was at the camp.

Vidunas worked at the camp as a barn manager in the summer of 2021. Her official job duties included managing "horse care and stable maintenance," supporting riding director Anna Nott, and helping to plan and organize the camp's equestrian events, including by locating and leasing horses.[1] Vidunas also performed duties at Nott or Warner's direction that were not listed on the official job description. Vidunas had been around Otis "[a]ll summer long."

The camp hosted a horse show in August 2021. The day before the event, Warner asked Vidunas to "trot" one of the horses so that Warner could determine if it was lame. Vidunas's role was to encourage the horse to move forward from a position behind the horse while Nott led the horse from the front. Vidunas followed the horse "clucking" with a "raised voice," waving and clapping her hands, and smacking the horse's rump. Warner was present with both Rollins and Otis and was jogging behind or alongside the horse. According to an incident report Nott filled out later that day, when Otis "saw [Vidunas] running after/behind [Warner], he chased [Vidunas] and bit" her in the calf. Warner similarly wrote in her incident report that Otis "chase[d]" Vidunas and bit her in the calf. Vidunas received injuries that required medical attention.

Vidunas filed a personal injury suit in the general district court, alleging negligence against Warner and Camp Mont Shenandoah. The defendants filed a special plea in bar, asserting that the Workers' Compensation Act provided the exclusive remedy for Vidunas's injury. The district court overruled the special plea in bar but ultimately found in the defendants' favor on the merits.

---

[1] Vidunas submitted the barn manager job description as an exhibit at the plea-in-bar hearing.

Vidunas timely appealed to the circuit court. The defendants filed a cross-appeal from the district court's decision overruling their special plea in bar. They later moved to file an amended special plea in bar in the circuit court, which the court granted without objection from Vidunas.

In August 2024, the circuit court held a hearing on the amended special plea in bar and heard testimony from Warner and Vidunas. Following the hearing, the circuit court found that Vidunas's injury arose from her employment and that the Workers' Compensation Act provided the exclusive remedy. Accordingly, the court announced that it would grant the plea in bar and asked the defendants to prepare a final order.

Vidunas moved for reconsideration, asserting for the first time that the defendants had paid the writ tax and costs of their cross-appeal to the circuit court instead of the district court, which she argued deprived the circuit court of jurisdiction to consider the defendants' amended special plea in bar.[2] The circuit court denied reconsideration, concluding that no writ tax or costs were required because, "unlike a counterclaim, a plea in bar is a defensive pleading." The court then dismissed Vidunas's action with prejudice.

ANALYSIS

*I. Vidunas's injury arose out of her employment.*

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)). "The party asserting the plea in bar bears the burden of proof." *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022) (quoting *Massenburg*, 298 Va. at 216). We "review the circuit court's legal conclusions de novo." *Id.*

---

[2] The defendants do not dispute that they paid a writ tax and costs to the circuit court rather than the district court.

But when the "parties present evidence on the plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support." *Id.* (quoting *Massenburg*, 298 Va. at 216).

The Workers' Compensation Act "reflects a legislative 'quid pro quo' that gave workers the right to assert no-fault liability against their employers (a right that they had never possessed) and took from them the right to sue their employers in tort for negligence (a right that they had possessed under the common law)." *Lopez v. Intercept Youth Servs., Inc.*, 300 Va. 190, 196 (2021). Thus, "[i]n general, [workers' compensation] benefits are an injured employee's exclusive remedy for a workplace injury falling within the Act." *Hartford Underwriters Ins. Co. v. Allstate Ins. Co.*, 301 Va. 460, 469 (2022); Code § 65.2-307. An injury under the Act is one "by accident arising out of and in the course of the employment or occupational disease." Code § 65.2-101. "[T]he expressions 'arising out of' and 'in the course of' are used conjunctively and are not synonymous. Both conditions must be satisfied before compensation can be awarded." *King v. DTH Contract Servs.*, 69 Va. App. 703, 712 (2019) (alteration in original) (quoting *Graybeal v. Bd. of Supervisors of Montgomery Cnty.*, 216 Va. 77, 78 (1975)). "Whether an injury arises out of and in the course of employment is a mixed question of law and fact." *United Cont'l Holdings, Inc. v. Sullivan*, 79 Va. App. 540, 551 (2024).

The parties agree that Vidunas's injury occurred in the course of her employment but dispute whether it arose out of her employment. To determine whether a workplace injury arose out of the employment, Virginia follows the "actual risk" test; the test is met when "the employment subject[s] the employee to the particular danger that brought about his or her injury." *Conner v. City of Danville*, 70 Va. App. 192, 201 (2019) (quoting *Smithfield Packing Co. v. Carlton*, 29 Va. App. 176, 181 (1999)). "The 'arising out of' requirement focuses on 'the origin or cause of the injury'" and is satisfied "'if there is a causal connection between the

claimant's injury and the conditions under which the employer requires the work to be performed.'" *Lopez*, 300 Va. at 197 (quoting *R&T Invs., Ltd. v. Johns*, 228 Va. 249, 252 (1984)). "Put another way, an actual risk of employment is 'not merely the risk of being injured while at work'" but is one that is "'*peculiar to the work* and not common to the neighborhood.'" *Id.* (first quoting *Taylor v. Mobil Corp.*, 248 Va. 101, 107 (1994); and then quoting *Hill City Trucking, Inc. v. Christian*, 238 Va. 735, 739 (1989)). The risk "need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *Simms v. Ruby Tuesday, Inc.*, 281 Va. 114, 123 (2011) (quoting *Bradshaw v. Aronovitch*, 170 Va. 329, 335 (1938)).

Vidunas argues that this case is controlled by *Lipsey v. Case*, 248 Va. 59 (1994). Indeed, *Lipsey* bears some superficial similarities. Lipsey worked as a student horse trainer at a farm. *Id.* at 60. The farm paid her no wages but provided her with living facilities on the farm, which she shared with two other students. *Id.* One day, Lipsey was on lunch break at the shared house where she resided with other student workers when one of the other student's dogs bit her. *Id.* at 61. The Supreme Court assumed that the injury occurred in the course of Lipsey's employment but held that it did not arise out of her employment because "[n]othing about the nature or character of her work, *i.e.*, the care and training of horses, reasonably could have exposed or subjected her to the danger of being bitten by a co-worker's pet dog." *Id.*

We distinguished *Lipsey* in an unpublished decision in *Prince William Cnty. Sch. Bd. v. Fogarty*, No. 1866-98-4, 1999 Va. App. LEXIS 513 (Aug. 31, 1999).[3] There, we held that a dog bite injury arose out of an assistant principal's employment when her supervising principal thrice instructed her to meet his dog at the school during working hours. *Id.*, slip op. at 2, 1999

---

[3] "Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority." *Otey v. Commonwealth*, 71 Va. App. 792, 799 n.3 (2020) (quoting *Samartino v. Fairfax Cnty. Fire and Rescue*, 64 Va. App. 499, 508 n.2 (2015)).

Va. App. LEXIS 513, at \*2-3.  We reasoned that "[w]here the employee is injured while performing an activity that the employer has instructed him or her to do, that work constitutes part of an employee's employment responsibilities and required work, even though different from his or her usual and regular tasks performed in the employer's business."  *Id.*, slip op. at 3-4, 1999 Va. App. LEXIS 513, at \*4.  *Lipsey* did not compel a different result, we explained, because Lipsey "did not allege that the employer required her to have physical contact with the dog."  *Id.*, slip op. at 4-5, 1999 Va. App. LEXIS 513, at \*5.

This case is closer to *Fogarty* than *Lipsey*.  Warner not only instructed Vidunas to trot the horse, she required that Vidunas do so in Otis and Rollins's presence.  Unlike Lipsey, who was bit by a co-worker's dog while eating lunch, Vidunas's employer required Vidunas to be around the employer's dogs and she was bitten while handling the horse in close proximity to the dog.

Acknowledging that distinction does not transform our "analysis into an assessment of 'positional risk,' which asks only if the injury occurred during the course of employment." *Bernard v. Carlson Cos.-TGIF*, 60 Va. App. 400, 405 (2012) (quoting *Cnty. of Chesterfield v. Johnson*, 237 Va. 180, 185 (1989)).  Again, an injury arises out of employment when it arises out of the "*conditions* under which the employer requires the work to be performed."  *Lopez*, 300 Va. at 197 (emphasis added) (quoting *Johns*, 228 Va. at 252).  Those conditions are more than just the job functions listed on the official job description.  They also include general workplace conditions if those conditions present an enhanced risk or one that is qualitatively different than that experienced by the general public.  *See Bernard*, 60 Va. App. at 407 (collecting cases and explaining that injuries caused by an employee tripping on stairs ordinarily does not arise out of employment but may "if the steps are 'unusual' because they are 'slightly higher than normal' or otherwise peculiar").

Several unpublished cases concerning spider bites illustrate the point. In *Wilson v. Ace Hardware Corp.*, No. 1719-10-2, 2011 Va. App. LEXIS 158 (May 10, 2008), a spider bit an employee while he was cleaning a battery rack station. *Id.*, slip op. at 2, 2011 Va. App. LEXIS 158, at *2. The employee had testified that he kept the battery rack station "very clean" but that there were often spiders in a storage area in a separate part of the warehouse. *Id.*, slip op. at 1, 2011 Va. App. LEXIS 158, at *1-2. "Without any indication as to the propinquity of the 'very clean' battery rack station and the spider webs in the storage area," we found the evidence "insufficient to prove that the spider that bit [the employee] resulted from a peculiar condition related to his employment." *Id.*, slip op. at 5, 2011 Va. App. LEXIS 158, at *7. In *James Madison University v. Housden*, No. 1252-19-3, 2020 Va. App. LEXIS 63 (Mar. 10, 2020), a spider bit an employee at her desk. *Id.*, slip op. at 2, 2020 Va. App. LEXIS 63, at *2. The employee presented evidence that spiders were a regular occurrence in her office in the months preceding the bite as a result of construction work on the floor below. *Id.*, slip op. at 2-4, 2020 Va. App. LEXIS 63, at *2-6. Because "the record demonstrated a peculiar and unusual presence of spiders in claimant's office area," we held that the employee's injury arose out of her employment. *Id.*, slip op. at 8-9, 2020 Va. App. LEXIS 63, at *12-13. Together, these cases demonstrate that an animal bite arises out of employment if the employer requires the employee to work under conditions where such a bite is peculiarly likely.

Here, Vidunas's employer required her to run behind a horse, making loud noises and slapping the horse's rump, while the employer ran alongside with her dog. Those were the conditions of Vidunas's employment. As the spider bite cases show, the fact that Warner required Vidunas to be around Otis and Rollins increased Vidunas's risk of suffering a dog bite injury, particularly because Otis had bitten someone before. Moreover, it was reasonably foreseeable that the conditions increased the risk of one of the dogs biting Vidunas, either

because they were excited by the loud noises or because they perceived a threat to Warner as Vidunas ran behind her. Accordingly, the circuit court did not err in concluding that Vidunas's injury arose out of her employment.

*II. The circuit court had jurisdiction to consider the amended special plea in bar.*

"Motions to reconsider are generally 'not favored.'" *Everett v. Tawes*, 298 Va. 25, 40 (2019) (quoting *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 403 (1985)). Appellate courts review the denial of a motion to reconsider for abuse of discretion. *Primov v. Serco, Inc.*, 296 Va. 59, 70 (2018). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

"Whether the record establishes subject matter jurisdiction in a particular case is a question of law reviewed de novo on appeal." *Ruderman v. Pritchard*, 76 Va. App. 295, 302 (2022). "[Q]uestions of statutory construction are also reviewed under a de novo standard." *Id.* The "primary objective [of statutory construction] is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Commonwealth v. Canales*, ___Va. ___, ___ (Apr. 10, 2025) (quoting *Commonwealth v. Delaune*, 302 Va. 644, 655 (2023)). "Words in a statute are to be construed according to their ordinary meaning, given the context in which they are used." *Id.* (quoting *Grant v. Commonwealth*, 223 Va. 680, 684 (1982)).

"If any party timely notices an appeal . . . such notice of appeal shall be deemed a timely notice of appeal by any other party on a final order or judgment entered in the same or a related action arising from the same conduct, transaction, or occurrence as the underlying action." Code § 16.1-106(B); *see also* Rule 7B:12(a). But "all parties will be required to timely perfect their own respective appeals by giving a bond and the writ tax and costs, *if any*, in accordance with [Code] § 16.1-107." Code § 16.1-106(B) (emphasis added); *see also* Rule 7B:12(b). "[A]ny

party applying for appeal shall, within 30 days from the date of the judgment, pay *to the clerk of the court from which the appeal is taken* the amount of the writ tax of the court to which the appeal is taken and costs as required by" Code § 17.1-275(A)(13).  Code § 16.1-107(F) (emphasis added).[4]

Vidunas contends that the defendants failed to perfect their cross-appeal by paying the writ tax and costs to the circuit court instead of the district court, depriving the circuit court of subject matter jurisdiction over the amended special plea in bar.  Because the amended special plea in bar was merely a defensive pleading, however, the defendants were not required to pay a writ tax and costs before the circuit court could consider their argument.  Accordingly, the circuit court did not abuse its discretion by denying Vidunas's motion for reconsideration.

By specifying "if any," Code § 16.1-106(B) expressly contemplates that a writ tax and costs may not be required in all cases.  In addition to circumstances not pertinent here, the Code imposes a writ tax of five dollars on "the removal or appeal of *a cause of action* from a district court to a court of record."  Code § 58.1-1727 (emphasis added).  "[A] cause of action is a set of operative facts which, under the substantive law, may give rise to a right of action."  *Lee v. Spoden*, 290 Va. 235, 248-49 (2015) (alteration in original) (quoting *Roller v. Basic Constr. Co.*, 238 Va. 321, 327 (1989)).  A "right of action" "is the remedial right accorded [a] person to enforce a cause of action [and] arises only when [a] person's rights are infringed."  *Id.* at 249 (alterations in original) (quoting *Roller*, 238 Va. at 327).  A plea in bar, by contrast, is not a cause of action but rather a defense to one.  *See, e.g.*, *Cal. Condo Ass'n v. Peterson*, 301 Va. 14, 18 (2022) ("Peterson filed a plea in bar asserting that the Association's cause of action . . . could

---

[4] Code § 16.1-107(A) also provides that "[n]o appeal shall be allowed" until the appealing party gives a bond "in an amount sufficient to satisfy the judgment of the court in which it was rendered."  There was no judgment for the defendants to satisfy given that they ultimately prevailed in the district court.

not survive either of the two potential statutes of limitations."). A plea in bar does not assert that the pleader's rights have been infringed or request a remedy; it presents a reason to deny a remedy. In short, the defendant's cross-appeal of the district court's denial of their plea in bar was not the "appeal of a cause of action" under the statute, and no writ tax was required.

The defendants were similarly not required to pay costs. Code § 16.1-107(F) requires costs only if they would be required under Code § 17.1-275(A)(13), which generally covers fees collected by the "clerk of a circuit court." Code § 17.1-275(A)(13) requires costs "chargeable to the plaintiff" for "claims for the award of monetary damages," including counterclaims or claims impleading a third-party defendant. As Vidunas notes, the statute expressly exempts cross-claims and setoffs but does not mention defensive pleadings. The reason for that is simple: cross-claims and setoffs are "claims for the award of monetary damages" that would ordinarily fall within the statute's scope absent an exemption. A plea in bar, on the other hand, is not such a claim. In other words, there is no express exemption because none is needed; Code § 17.1-275(A)(13) does not apply to pleas in bar. That the statute requires only costs that are "chargeable to the plaintiff" further bolsters the conclusion that it does not apply to purely defensive pleadings.

Generally, "an appellee is free to defend [the lower court's] judgment on any ground supported by the record, whether or not that ground was relied upon, rejected, or even considered by the [lower] court." *Primov*, 296 Va. at 68 (quoting *Robert & Bertha Robinson Fam., LLC v. Allen*, 295 Va. 130, 141 (2018)). Even assuming the defendants had to appeal the district court's denial of their special plea in bar, the statutes setting forth the required fees and costs do not

apply to such an appeal.[5]  Accordingly, the circuit court did not abuse its discretion by denying

Vidunas's motion for reconsideration.[6]

CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[5] Vidunas relies heavily on *Allen*, in which the Supreme Court held that a landlord's appeal from the district court did not also appeal the tenants' counterclaim.  *Allen*, 295 Va. at 145-48.  But a plea in bar is not a counterclaim.  *Allen* makes clear that an appeal confers appellate jurisdiction only over certain claims, but that fact does not necessarily restrict the arguments that the appellee(s) may make in defending *against* those claims.

[6] "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'"  *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Swann*, 290 Va. at 196).  Accordingly, we do not address whether paying a required writ tax and costs to the circuit court instead of the district court would constitute a jurisdictional defect or would fall in the safety net of Code § 16.1-114.1 (providing that "[n]o warrant, motion or other pleading shall be dismissed by reason of a mere defect, irregularity or omission in the proceedings in the district court, or in the form of any such pleading, when the same may be corrected by a proper order of the court of record").  We note, however, that the only action the district court takes upon receiving the writ and costs is to "promptly transmit" them to the circuit court with the rest of the case.  Code § 16.1-112.