COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Clements
Argued at Richmond, Virginia


CHRISTOPHER MORRIS GATES

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 1877-10-2              JUDGE RANDOLPH A. BEALES
                                                 NOVEMBER 8, 2011

COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         Margaret P. Spencer, Judge

         James A. Bullard, Jr., for appellant.

         Craig W. Stallard, Assistant Attorney General (Kenneth T.
         Cuccinelli, II, Attorney General, on brief), for appellee.


        Christopher Morris Gates (appellant) appeals his convictions for possession of heroin with

the intent to distribute (under Code § 18.2-248) and possession of heroin with the intent to distribute

while within 1,000 feet of school property (under Code § 18.2-255.2).  Appellant entered a

conditional guilty plea to these charges in the trial court, preserving his right to appeal the denial of

his motion to suppress.  On appeal, we conclude that the trial court did not err when it denied

appellant's motion to suppress, and, therefore, we affirm both convictions for the following reasons.

                                   I. BACKGROUND

        "Under familiar principles of appellate review, we will state 'the evidence in the light most

favorable to the Commonwealth, the prevailing party in the trial court, and will accord the

Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence.'"

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Sidney v. Commonwealth, 280 Va. 517, 520, 702 S.E.2d 124, 126 (2010) (quoting Murphy v. Commonwealth, 264 Va. 568, 570, 570 S.E.2d 836, 837 (2002)).

So viewed, the evidence at the suppression hearing established that Officer Michael Verbena observed appellant and some other men standing near the 1400 block of Coalter Street in the Mosby Court neighborhood of the City of Richmond on October 21, 2009. Officer Verbena described this area as "a high drug, high crime area," and he testified that the police had made several drug-related arrests and had conducted several controlled drug transactions there. Officer Verbena specifically noted that the "cut" between buildings where appellant and the other men were standing was known as a place frequented by trespassers and drug dealers.

Officer Verbena readily recognized appellant because the officer had investigated prior incidents or allegations involving appellant. Previously, the officer testified, he had recovered heroin from an upstairs bedroom of appellant's residence and also had responded a year earlier to a call alleging that appellant was involved in a domestic shooting. In addition, according to Officer Verbena, a reliable informant had told him that a person named Chris and resembling appellant's physical appearance was dealing drugs at the 1400 block of Coalter Street about two to three weeks before the officer observed appellant in that "exact vicinity" on October 21, 2009. This information from the reliable informant matched Officer Verbena's own information about appellant. On cross-examination, Officer Verbena testified, without objection, "I know [appellant] hangs out in that area and I've known him to deal drugs from there before."

When Officer Verbena pulled his patrol car within fifteen feet of appellant and the other men, they began walking deeper into Mosby Court. According to Officer Verbena, appellant then looked in the direction of the patrol car, but "bladed his body" so as to conceal his right hand and the right side of his body from the officer's view. Describing for the trial court what the term

"blading" meant, Officer Verbena testified, "He basically turned his body so we[1] could not see his backside. He was concealing his side from us." Officer Verbena testified that appellant then appeared to "put something in his backside area towards his right side specifically."

At this point, Officer Verbena exited the patrol car, approached appellant, and "patted down that exact area where I watched his arm go for our safety to make sure he had put no weapons there." During this brief pat down, Officer Verbena felt a key and also felt a "hard knot," which he "believed to be" indicative of "some type of narcotic" packaged in a plastic baggie. Officer Verbena asked appellant what was in his pocket, and appellant replied, "Nothing." Officer Verbena then placed appellant in handcuffs and retrieved what was later determined to be heroin from appellant's pocket.

Based on this testimony, the trial court found that several circumstances justified Officer Verbena's decision to detain appellant and perform a pat down of appellant under Terry v. Ohio, 392 U.S. 1 (1968), including: (1) appellant's "blading" of his body, which the trial court found was "furtive" and "suspicious"; (2) the location of the encounter in an area known for drug transactions; (3) the information about the drug dealer named Chris that the reliable informant supplied to Officer Verbena; (4) Officer Verbena's knowledge that appellant "had a gun on a prior occasion"[2]; and

---

[1] Three other officers were with Verbena in his patrol car.

[2] Appellant asserted for the first time during oral argument before this Court that Officer Verbena's testimony about appellant's participation in a "shootout" at his home cannot be considered among the totality of the circumstances in this case. We disagree with this assertion. Officer Verbena prefaced his testimony about this incident with the phrase "if I'm not mistaken," and appellant objected to this testimony as speculative. At the trial court's direction, the prosecutor rephrased the question to Officer Verbena, who then testified that his knowledge of the "shootout" he had just described was from the victim's statement to the police. The trial court later noted during the suppression hearing that Officer Verbena's testimony about appellant having "a gun on a prior occasion" was a circumstance supporting the officer's decision to detain and conduct a pat down of appellant for weapons. At that time, appellant never contended that this testimony had been ruled inadmissible or could not otherwise be considered by the trial court. See Rule 5A:18.

- 3 -

(5) Officer Verbena's recovery of heroin from appellant's residence on a prior occasion. The trial court also found that the pat down of appellant was "not for drugs, but for weapons."

Furthermore, discussing the circumstances relating to the actual search of appellant for contraband and the subsequent seizure of the heroin, the trial court found:

> At that time the officer felt something which appeared to feel like drugs. Still, however, the officer does not have probable cause. Now, what gives the officer probable cause is when the officer asked the defendant, what do you have in your pocket, and the defendant said, nothing, the officer clearly felt something in the defendant's pocket. So the response, "nothing," at that point I think gave him probable cause to believe that the defendant possessed contraband in his pocket.

Therefore, rather than basing its finding of probable cause solely on the "plain feel doctrine," see, e.g., Murphy, 264 Va. at 572, 570 S.E.2d at 838, the trial court noted that its finding of probable cause was also supported by the evidence that appellant simply "was not telling the truth" to the officer when asked what was in his pocket.

## II. ANALYSIS

Appellant contends that the trial court erred when it denied his motion to suppress.

> In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial. The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law de novo. Ward v. Commonwealth, 273 Va. 211, 218, 639 S.E.2d 269, 272 (2007).

Malbrough v. Commonwealth, 275 Va. 163, 168-69, 655 S.E.2d 1, 3 (2008). An appellate court reviewing the denial of a motion to suppress should "'give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).

- 4 -

A. TEMPORARY DETENTION AND PAT DOWN FOR WEAPONS

Appellant argues that Officer Verbena unlawfully detained him and unlawfully patted him down for weapons. "A police officer may conduct a brief investigatory stop when the officer, in light of his training and experience, has reasonable, articulable suspicion that criminal activity is afoot." Jones v. Commonwealth, 279 Va. 665, 673, 691 S.E.2d 801, 805 (2010); see Terry, 392 U.S. at 22. In addition, "[a]n officer may conduct a pat-down search for weapons if the officer can point to specific and articulable facts which reasonably lead him to believe criminal activity may be afoot *and* the person subjected to the search may be armed and dangerous." Lowe v. Commonwealth, 33 Va. App. 656, 660-61, 536 S.E.2d 454, 456-57 (2000) (emphasis added).

Viewing the evidence "in the light most favorable to the Commonwealth, the prevailing party at trial," Malborough, 275 Va. at 168, 655 S.E.2d at 3, Officer Verbena had far more than an "unparticularized suspicion or hunch" that criminal activity was afoot. Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000). Appellant was present with other persons in a high crime area where drug transactions tend to occur. See Whitaker v. Commonwealth, 279 Va. 268, 276, 687 S.E.2d 733, 737 (2010) ("[W]hile a suspect's presence in a high crime area, standing alone, is not enough to support a reasonable particularized suspicion, it is a relevant contextual consideration in a Terry analysis."). Officer Verbena's past investigations of appellant had involved heroin and a firearm, and the officer had received information from a reliable informant that a man named Chris who had a similar physical appearance as appellant was dealing drugs in that "exact vicinity" two to three weeks earlier. See Purdie v. Commonwealth, 36 Va. App. 178, 187-88, 549 S.E.2d 33, 38 (2002) (noting that an officer is permitted to rely on knowledge of the suspect's prior acts). Moreover, when Officer Verbena pulled his patrol car within fifteen feet of the group of people that included appellant, the officer observed appellant "blade" his body – in an apparent attempt to conceal an object that he had been holding while he placed that object in his pocket – which the trial court

found was "furtive" and "suspicious" behavior. See id. at 186, 549 S.E.2d at 37 (noting that a person's "furtive movements and suspicion conduct" are relevant factors among the totality of the circumstances in a Fourth Amendment analysis).

In addition, a police officer "'need not be absolutely certain that the individual is armed'" in order to conduct a pat down for weapons. Commonwealth v. Smith, 281 Va. 582, 589-90, 709 S.E.2d 139, 142 (2011) (quoting Terry, 392 U.S. at 27). Instead, "'the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger'" based on "'the specific reasonable inferences which he is entitled to draw from the facts in light of his experience'" as a police officer. Id. (quoting Terry, 392 U.S. at 27). "The circumstances that a court can consider when determining whether an officer had reasonable suspicion [to conduct a pat down for weapons] include the nature of the area in which the stop occurred, the time of day, the conduct and demeanor of the suspect, and the type of offense that the officer was investigating." Roulhac v. Commonwealth, 50 Va. App. 8, 17, 646 S.E.2d 4, 8 (2007).

Here, appellant was in "high drug, high crime" area, according to Officer Verbena, and the specific "cut" between buildings where appellant had been standing with the other men was known for drug transactions. Officer Verbena testified that he had heard from a reliable informant that a man named Chris with a similar physical appearance as appellant had been dealing drugs at that location two to three weeks earlier, and the officer also testified at the suppression hearing that he had "known [appellant] to deal drugs from there before." See Walker v. Commonwealth, 42 Va. App. 782, 792, 595 S.E.2d 30, 35 (2004) ("'Suspicion of narcotics possession and distribution . . . standing alone, gives rise to an inference of dangerousness . . . .'" (quoting Williams v. Commonwealth, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987))). Furthermore, Officer Verbena testified that he had recovered heroin from an upstairs bedroom of appellant's residence, and he testified that he had also investigated a complaint that appellant was involved in a "shootout" at that

residence – giving the officer further cause to suspect that appellant had access to a firearm and might be armed.  See Bandy v. Commonwealth, 52 Va. App. 510, 518, 664 S.E.2d 519, 523 (2008) ("Courts have often recognized that 'the connection between illegal drug operations and guns is a tight one.'" (quoting Jones v. Commonwealth, 272 Va. 692, 701 n.3, 636 S.E.2d 403, 407 n.3 (2006))).

In addition, unlike in Thompson v. Commonwealth, 54 Va. App. 1, 8, 675 S.E.2d 832, 835 (2009), where the defendant "exhibited no behavior that suggested he was armed and dangerous," appellant's own behavior suggested that he was armed and dangerous.  Appellant "bladed" his body so as to conceal his right side from Officer Verbena's view.  The trial court, having seen and heard Officer Verbena's description of appellant's "blading" motion, found that "the defendant stuck his right hand to his backside, turned his body so that the police officer could not see him, and was moving backwards while still watching them."  The trial court found that appellant's behavior was "furtive" and "suspicious" – giving Officer Verbena further reason to suspect that appellant was armed and dangerous.  See Thompson, 54 Va. App. at 10, 675 S.E.2d at 836 ("The common thread in those cases involving high crime areas and nervous behavior is the specific act of a furtive gesture to suggest that the suspect is armed."); see also Walker, 42 Va. App. at 792, 595 S.E.2d at 35 (noting that "appellant's behavior was suspicious").

Given all of these circumstances, the record below amply supports the "minimal level of objective justification" required to detain appellant under the Fourth Amendment.  Wardlow, 528 U.S. at 124.  In addition, as the trial court noted, all of these circumstances are relevant in determining that Officer Verbena conducted a lawful pat down of appellant for officer safety.

Appellant also argues that Officer Verbena lacked probable cause to search his pocket for contraband and to seize the heroin found in that pocket. Appellant contends that the presence of contraband was not "immediately apparent" during the pat down and, therefore, the subsequent seizure of the heroin from his pocket was not authorized by the "plain feel doctrine." See Murphy, 264 Va. at 572, 570 S.E.2d at 838. However, probable cause in this case does not turn on the application of the "plain feel doctrine." Instead, the totality of the circumstances in this case – including the circumstances arising after Officer Verbena conducted the pat down – established the necessary probable cause to search appellant's pocket and retrieve the heroin from that pocket.[3]

The "plain feel doctrine" applies to "tactile discoveries of contraband." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). If, during a lawful pat down of a suspect's outer clothing, a police officer "'feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons'" under the pat-down rule announced in Terry. Murphy, 264 Va. at 574, 570 S.E.2d at 839 (quoting Dickerson, 508 U.S. at 375-76). In such a case (as with cases where the "plain view doctrine" applies), the officer has "a lawful right of access to the object" and "may seize it without a warrant." Dickerson, 508 U.S. at 375. However, if "the character of the item is not immediately apparent from the 'pat down' search, and the officer does not reasonably suspect that the item is a weapon, further search regarding the item is not allowed because such an evidentiary search is unrelated to the justification for the frisk." Murphy, 264 Va. at 574, 570 S.E.2d at 839.

Although the Commonwealth argued that the "plain feel doctrine" applied in this case, the trial court expressly declined to rely on this doctrine. Specifically, the trial court found that Officer Verbena felt something during the pat down of appellant "which appeared to feel like drugs," but

---

[3] Thus, although the concurrence claims otherwise, we do not apply the "plain feel doctrine" to the facts of this case.

the trial court also found that probable cause to believe that the object was contraband did not develop *solely* from the officer's observations during the pat down. Instead, the trial court explained that appellant's subsequent statement that he had "nothing" in his pocket was a significant indication that appellant "was not telling the truth" to the officer. The trial court found that this obvious lie – *in addition* to all of the circumstances justifying the pat down *and* Officer Verbena's observations during the pat down – established probable cause to seize the item from appellant's pocket. We agree with the reasoning and conclusion of the trial court.

"'[P]robable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Jones v. Commonwealth, 277 Va. 171, 178, 670 S.E.2d 727, 731 (2009) (quoting United States v. Grubbs, 547 U.S. 90, 95 (2006)).

> "The legal standard of probable cause, as the term suggests, relates to probabilities that are based upon the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. The presence or absence of probable cause is not to be examined from the perspective of a legal technician."

Barnes v. Commonwealth, 279 Va. 22, 34, 688 S.E.2d 210, 216 (2010) (quoting Parker v. Commonwealth, 255 Va. 96, 106, 496 S.E.2d 47, 53 (1998)); see Draper v. United States, 358 U.S. 307, 313 (1959). In order to ascertain whether probable cause exists, appellate courts should focus on "what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control." Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976).

In Brown v. Commonwealth, 270 Va. 414, 420-21, 620 S.E.2d 760, 763 (2005), the Supreme Court noted that it has "consistently declined to find that probable cause can be established *solely* on the observation of material which can be used for legitimate purposes, even though the experience of an officer indicates that such material is often used for illegitimate purposes." (Emphasis added). Rather, "[t]o support a finding of probable cause, such observations must be

combined with *some other circumstance* indicating criminal activity." Id. at 421, 620 S.E.2d at 763 (emphasis added).

Here, Officer Verbena conducted a valid pat down of appellant under circumstances giving the officer reason to believe that appellant was armed and dangerous. See Lowe, 33 Va. App. at 660-61, 536 S.E.2d at 456-57. Officer Verbena testified that he felt "some kind of narcotic" protruding from appellant's pocket during the pat down. The officer explained that he knew he felt narcotics because he had "made numerous drug arrests in the City of Richmond" and that the "large knot" he felt was consistent with how narcotics tend to be packaged. Although the trial court did not conclude that the presence of contraband was "immediately apparent" during the pat down under the "plain feel doctrine," the trial court certainly was entitled to afford significant weight to the testimony of an experienced law enforcement officer. See Reittinger, 260 Va. at 236, 532 S.E.2d at 27. Thus, the trial court found that the object Officer Verbena touched during the pat down "*appeared* to feel like drugs." (Emphasis added).

*In addition*, appellant then told the officer that "nothing" was in his pocket – an obvious lie that was another "circumstance indicating criminal activity." Brown, 270 Va. at 421, 620 S.E.2d at 763. This circumstance contributed to a very different situation than the facts in Murphy, 264 Va. at 574, 570 S.E.2d at 839, where a pat down simply "revealed only that there was a plastic bag in Murphy's pocket." Murphy did not make any false statements to the officer – unlike appellant in this case, as the trial court here noted. This case is also unlike Cost v. Commonwealth, 275 Va. 246, 253, 657 S.E.2d 505, 508 (2008), where Cost had some capsules in his pocket that could have been over-the-counter medication *and* there was no evidence "that Cost did anything by stealth or in a surreptitious manner." Furthermore, this case is also unlike Harris v. Commonwealth, 241 Va. 146, 147-48, 400 S.E.2d 191, 192 (1991), where the police officer had *already* seized a film canister from Harris's pocket without probable cause *before* Harris lied about the contents of the film

canister, and, therefore, Harris's lie could not provide support for a finding of probable cause under the specific facts of that case. Here, unlike in Harris, Officer Verbena did not actually seize the contraband from appellant's pocket until *after* appellant told the officer that there was "nothing" in his pocket. Instead, the facts of this case are similar in this respect to those in Mavin v. Commonwealth, 31 Va. App. 161, 165, 521 S.E.2d 784, 786 (1999), where Mavin made suspicious movements and then denied any knowledge of a pill bottle that he had just been holding. This Court held that "[s]uch furtive conduct gave [the police officer] probable cause to believe that a crime was being committed." Id.

Here, Officer Verbena suspected that appellant was involved in a drug transaction, based on the reliable informant's tip and the officer's own personal knowledge. See Purdie, 36 Va. App. at 187, 549 S.E.2d at 38 (stating that an officer's knowledge of the suspect's "prior conduct is relevant in determining whether probable cause to arrest existed"). Officer Verbena observed appellant "blading" his body so as to conceal his right hand and the right side of his body, the officer felt what appeared to be packaged narcotics during the pat down of appellant's right side, and then appellant claimed in what was clearly a lie that "nothing" was in his pocket on the right side of his body. Given the totality of all of these circumstances – with each circumstance mounting upon the others – there was a "fair probability" that contraband would be found in appellant's pocket, as probable cause was defined by the United States Supreme Court in Grubbs, 547 U.S. at 95; see also Jones, 277 Va. at 178, 670 S.E.2d at 731.

Therefore, the trial court did not err in finding that Officer Verbena had probable cause to search appellant's pocket for contraband and to seize the heroin from that pocket.

### III. CONCLUSION

The initial detention and pat down of appellant were supported by reasonable, articulable suspicion that criminal activity was afoot and that appellant was armed and dangerous.

- 11 -

Furthermore, under the totality of the circumstances in this case, Officer Verbena had probable cause to search appellant's pocket for contraband and to seize the heroin from that pocket. Thus, the trial court did not err when it denied appellant's motion to suppress. Accordingly, for the foregoing reasons, we affirm appellant's convictions for possession of heroin with the intent to distribute and for possession of heroin with the intent to distribute while within 1,000 feet of school property.

<u>Affirmed.</u>

Humphreys, J., concurring.

Although I join in the analysis and holding in Part II(A) of the majority's opinion and in the judgment affirming the convictions, I do not join in the analysis contained in Part II(B) of the majority opinion. I believe the majority incorrectly analyzes and applies the so-called "plain feel" doctrine to the facts of this case.

In Grandison v. Commonwealth, 274 Va. 316, 645 S.E.2d 298 (2007), the Virginia Supreme Court said that,

> An officer who conducts a Terry pat-down search is justified in removing an item from a subject's pocket if the officer reasonably believes that the object might be a weapon. Additionally, the removal of an item from a subject's pocket is also justified if the officer can identify the object as suspicious under the "plain feel" variation of the plain view doctrine. However, if it is not obviously a weapon, an item may not be retrieved under the plain view doctrine unless it is "immediately apparent" to the officer that the item is evidence of a crime.

Id. at 319-20, 645 S.E.2d at 300 (quoting Coolidge v. New Hampshire, 403 U.S. 443 (1971)) (internal citations omitted).

However, the Virginia Supreme Court has made it clear that this doctrine is to be narrowly construed.

> [F]or the last 25 years, this Court has consistently declined to find that probable cause can be established solely on the observation of material which can be used for legitimate purposes, even though the experience of an officer indicates that such material is often used for illegitimate purposes. To support a finding of probable cause, *such observations must be combined with some other circumstance indicating criminal activity*.

Brown v. Commonwealth, 270 Va. 414, 420-21, 620 S.E.2d 760, 763 (2005) (emphasis added). Thus, as the majority points out, if material is not immediately apparent as a weapon or contraband during a pat down, the test for probable cause remains that of the totality of the circumstances. Furthermore, when an officer identifies an item that is often used for illegitimate

- 13 -

purposes despite having a legitimate purpose, its existence can only be used as one factor in the totality of the circumstances in determining if probable cause exists.

The facts in this case are similar to those presented in Murphy v. Commonwealth, 264 Va. 568, 570 S.E.2d 836 (2002). In Murphy, the defendant was in a residence that was searched pursuant to a warrant. Id. at 571, 570 S.E.2d at 837. The warrant authorized the police to search the residence for "'marijuana, cocaine, cocaine base, heroin, scales, ledgers, logs, money, guns, phone bills, syringes and any other item that would be connected with the illegal sale and/or use of any other illegal narcotic or non-prescription drug.'" Id. During the search, an officer conducted a pat down on the defendant and felt a plastic bag. Id. The officer testified at trial, "'I felt a bulge of plastic, . . . which is the way I commonly knew marijuana to be packaged. I could hear the plastic rattle as the pat-down had taken place and feeling the item through the pants I recognized it to be the way marijuana was packaged.'" Id. at 572, 570 S.E.2d at 838.

Even though the police had probable cause to support a search of the residence, and the officer testified that he knew from his experience that plastic bags often contained marijuana, the Court held that the search was prohibited by the Fourth Amendment. Id. at 574-75, 570 S.E.2d at 389. The Court found that the officer "lacked probable cause to seize the item from [the defendant's] pocket because the character of the bag's contents as contraband was not immediately apparent from the frisk." Id.

Similarly, in Harris v. Commonwealth, 241 Va. 146, 400 S.E.2d 191 (1991), the police received a tip from an informant that a fugitive would be driving a car in Henrico County. The informant said that the car would contain drugs, and the fugitive may have a weapon. Id. at 147-48, 400 S.E.2d at 192. The vehicle was stopped, and officers patted down the occupants for weapons. Id. While patting down Harris, an officer felt a film canister, which he removed from

Harris' pocket. The officer asked Harris what it contained, and Harris replied that it contained film. Id. The officer opened the film canister and found that it contained cocaine. Id.

Our Supreme Court held that seizing and searching the film canister violated the Fourth Amendment.

> Certainly, [the officer] was entitled to conduct a limited search of [the defendant] to assure himself that [the defendant] did not have any weapons in his possession which would have endangered the officer's safety. Indeed, the safety of the officer when conducting his duties is of paramount importance. However, [the officer's] seizure and search of the film canister during the weapon search was not permissible because the canister was not a weapon and he did not search the canister for a weapon. Rather, he had a "hunch" that the canister contained illegal drugs and therefore conducted a generalized search.

Id. at 151, 400 S.E.2d at 194.

The Court went on to hold that the "plain view" doctrine did not apply. Id. at 151, 400 S.E.2d at 195. The Court reasoned that the officer may have known

> from his personal experience of working "plain clothes assignments" and "making arrests" that certain people kept their narcotics and drugs in film canisters and "things of that nature." However, law-abiding citizens, on a daily basis, also use film canisters to store film, which is a legitimate use.

Id. at 154, 400 S.E.2d at 196.

Our Supreme Court has also held that an officer who felt "capsules" in a suspect's pockets did not have probable cause to seize the capsules, despite the officer's testimony that he was confident that they were heroin, because, based only on what the officer could feel, the capsules could have been any over-the-counter medication. Cost v. Commonwealth, 275 Va. 246, 657 S.E.2d 505 (2008); see also Grandison, 274 Va. 316, 645 S.E.2d 298 (holding that the trial court erred in denying the defendant's motion to suppress the evidence when an officer seized a dollar bill folded in an "apothecary" style which is known to store drugs).

- 15 -

In this case, Officer Verbena testified that the appellant was in a group of people in a "known cut for [individuals] to sell narcotics." As the officer pulled up in his vehicle, the group began to walk away from him. He recognized the appellant from a previous encounter in which drugs were found in the appellant's residence. The officer had also received a tip two to three weeks prior to that date from an informant. The informant said that a "light-skinned black male with braids by the name of Chris was out there dealing drugs . . . in the exact vicinity of where [appellant] was at that date and time."

As the group started to walk away, Officer Verbena observed the appellant "blade" his body away to conceal his right side from the officer. The appellant then made a motion as if to put something in his right backside area. Officer Verbena performed a pat down on the appellant. During the pat down, Officer Verbena felt a key and baggie with a hard knot. Officer Verbena testified that he immediately recognized it as "some type of narcotic." Officer Verbena asked what the appellant had in his pocket, and the appellant replied nothing. Officer Verbena then placed the appellant in handcuffs and asked what the appellant had in his pocket again. The appellant told Officer Verbena "to go ahead and get it." Officer Verbena removed the bag and found that it contained heroin.

Under these circumstances, it was certainly reasonable for Officer Verbena to pat down the appellant for weapons. However, given the precedent noted above, I cannot conclude that feeling a bag with a hard knot in it gives rise to probable cause to conduct a search of appellant's pocket. Officer Verbena testified that he recognized the knot as "some type of narcotic," but he "didn't know whether it was cocaine, marijuana, or heroin, or it could have been prescription pills." Although a knotted bag may be indicative of criminal behavior, there is nothing inherently criminal about a knotted bag in and of itself. Further, Officer Verbena admitted that the bag could have contained prescription drugs. While it is true that prescription drugs can be,

and often are, resold illegally, the appellant could have also been in lawful possession of his own prescription drugs. See e.g. Cost, 275 Va. 246, 657 S.E.2d 505. As such, it simply cannot be "immediately apparent" that the knotted bag appellant had contained evidence of a crime. Grandison, 274 Va. at 319-20, 645 S.E.2d at 300.

The majority also places great weight on the appellant's statement that there was nothing in his pocket. The trial court found that, because of this statement, Officer Verbena "knew that this defendant was not telling the truth." The court went on to hold that "when the defendant said he had nothing, it gave the officer probable cause to believe the defendant possessed contraband because the officer felt something." I disagree with both the majority and the trial court that this gives rise to probable cause. Accepting as a fact that Gates lied to Officer Verbena, that untruth did not render it probable that a crime was being committed.

> The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. We have stated, however, that "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," and that the belief of guilt must be particularized with respect to the person to be searched or seized.

Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)) (internal citations omitted). In this case, the mere fact that the appellant did not tell the truth to Officer Verbena regarding the contents of his pocket does not provide a "reasonable ground for belief of guilt." Id. Lying about having nothing in your pockets does not indicate a probability of possessing contraband, nor, standing alone, does it support a probability of any other criminal activity.

In sum, under the totality of the circumstances, I do not believe that the facts in this case create a "reasonable ground for belief of guilt." Id. At the time Officer Verbena conducted the pat down, he recognized the appellant from a previous encounter in which drugs were found in

the appellant's residence. He also knew that the appellant was in an area known for drug trade, observed the appellant "blade" his body, and had a tip that a "light-skinned black male with braids by the name of Chris was out there dealing drugs . . . in the exact vicinity of where [appellant] was at" two or three weeks earlier. This certainly gave rise to reasonable suspicion for Officer Verbena to investigate further and to perform a pat down on the appellant. However, even after patting down the appellant, feeling the knotted bag and despite Gates lying about the contents of his pockets, in my view there was still no reasonable ground for Officer Verbena to believe that the appellant was guilty of a crime.

However, my disagreement with the majority's analysis in this regard is not dispositive of the assignment of error. "Under the right result for the wrong reason doctrine, 'it is the settled rule that how[ever] erroneous . . . may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons.'" Perry v. Commonwealth, 280 Va. 572, 579, 701 S.E.2d 431, 435 (2010) (quoting Schultz v. Schultz, 51 Va. (10 Gratt.) 358, 384 (1853)).

In Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009), our Supreme Court held that "cases in which the party seeking affirmance failed to present the argument in the trial court, such that the trial court did not have an opportunity to rule on the argument, are not 'proper cases' for the application of the doctrine." Id. at 114, 677 S.E.2d at 270. However, in Perry, the Court said that "this principle, adopted from [Eason v. Eason, 204 Va. 347, 131 S.E.2d 280 (1963)], is too broad and is inconsistent with case law that followed it." Perry, 280 Va. at 580, 701 S.E.2d at 436. Instead, "[c]onsideration of the facts in the record and whether additional factual presentation is necessary to resolve the newly-advanced reason is the proper focus of the application of the doctrine." Id.

Thus, under the right result for the wrong reason doctrine, "the standard of review is whether the record demonstrates that all *evidence* necessary to the alternative ground for affirmance was before the circuit court and, if that evidence was conflicting, how it resolved the dispute, or weighed or credited contradicting testimony." Banks v. Commonwealth, 280 Va. 612, 618, 701 S.E.2d 437, 440 (2010) (emphasis added). Under this standard, I believe that the record affirmatively reflects all the evidence necessary to conclude that appellant consented to the seizure.

"A voluntary or consensual encounter between a police officer and a citizen does 'not implicate the fourth amendment,' as long as 'a reasonable person would understand that he or she could refuse to cooperate.'" Lawrence v. Commonwealth, 17 Va. App. 140, 144, 435 S.E.2d 591, 593 (1993) (quoting Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988); United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)). That is exactly what occurred in this case.

"'Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.'" Jones v. Commonwealth, 52 Va. App. 548, 555-56, 665 S.E.2d 261, 265 (2008) (quoting United States v. Drayton, 536 U.S. 194, 200 (2002)). The Supreme Court has said that

> [s]o long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature. The Court made precisely this point in Terry v. Ohio, 392 U.S. 1, 19, n. 16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968): "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

<u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991) (quoting <u>California v. Hodari D.</u>, 499 U.S. 621, 628 (1991)). Further, "[b]rief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" <u>Thomas v. Commonwealth</u>, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993) (quoting <u>United States v. Crittendon</u>, 883 F.2d 326, 329 (4th Cir. 1989)).

At the suppression hearing, the only testimony was that of Officer Verbena, who testified to the following facts. Officer Verbena was in a marked police cruiser with three other police officers when they spotted appellant. Although the officers were all uniformed and armed, only Officer Verbena and maybe one more officer were dealing with appellant. The remaining officers were dealing with other people in the area. After patting down appellant and feeling the knot, Officer Verbena asked what the item was. Appellant replied, "Nothing." At this point, Officer Verbena placed appellant in handcuffs and asked again what was in appellant's pocket. Appellant then responded that Officer Verbena could "go ahead and get it." Officer Verbena then pulled the drugs from appellant's pocket. This testimony was unrebutted.

Thus, the record affirmatively reflects that the trial court was correct in denying appellant's motion to suppress even if it did so for the wrong reason. I would therefore affirm on the basis that appellant consented to the seizure of the contents of his pocket and any further Fourth Amendment analysis is unnecessary.